JONES *et al.*

*v.*

MILLER *et al.*

(*Supreme Court of Appeals of Virginia, Oct. 16, 1882.*)

[23 S. E. Rep. 35.]

### Condemnation of Land—When Title Vests.

Where a railroad company condemns land, title thereto vests only upon payment into court, or to the parties.

### Same—Case at Bar.

After judgments had been docketed against a landowner, a railroad company condemned a right of way through the tract, and had damages duly assessed by commissioners, and their report confirmed, but the money was not paid into court. Certain grading having been done, the railroad was abandoned. The land was then sold to satisfy said judgments, the bed of the railroad not having been reserved at the sale. Subsequently the railroad enterprise was revived, and the damages assessed as above, with interest thereon, were paid into court. In a contest over this fund, between the creditors and purchasers at said sale: *held*, that the latter were entitled to the same.

Appeal from circuit court, Warren county; R. H. Turner, Judge.

J. D. Weaver, surviving partner, G. W. Jones & Co., and others obtained judgments against H. M. Miller at various times between 1868 and May, 1870, which were duly docketed. In the fall of 1870 the Shenandoah Valley Railroad Company went upon land owned by said Miller, to construct its road. Commissioners appointed for the purpose assessed the damages at $2,000, and made their report to court, which was duly confirmed; but the damages were never paid, and all work on the

road was abandoned in 1873. In September, 1871, a suit was instituted by Miller's creditors to have the land in question sold. An account of liens was taken, the land sold in 1874, and the sale confirmed, but to these proceedings the railroad was not made a party. At the time of said sale no announcement was made by the commissioners of sale of the fact of the existence of the railroad bed on the land, or of any reservation of the same, but said bed was sold with the balance of the land. In 1879 the railroad was resurrected, came into court, and asked leave to pay into court the damages assessed as above, and interest, which leave was given, and the money so paid. In a contest between the purchasers at said sale and the judgment creditors of Miller, as to who were entitled to said damages, the circuit court handed down the following opinion :

"The contest in this case is between the purchasers at a judicial sale of real property under a decree in a creditor's bill, and the creditors themselves, for the compensation awarded against the Shenandoah Valley Railroad Company for land taken for its purposes, and for damages to the residue of the land sold. The judgments of Weaver, surviving partner, and of G. W. Jones & Co., against H. M. Miller, the judgment debtor, were regularly docketed, and antedate the earliest connection of the Shenandoah Valley Railroad Company with the lands of Miller. The rights of these creditors, therefore, were paramount to those of the Shenandoah Valley Railroad Company. Weaver was one of the original parties plaintiff to the bill, and G. W. Jones & Co. came in and audited their judgments under an order convening the lien creditors of Miller, of November, 1871. An account of liens was reported and confirmed, and in 1874 there was a decree for sale. A sale was made and confirmed October, 1877. When the Shenandoah Valley Railroad Company first sought to take a roadbed, the judgment creditors had a right to subject the land of Miller to the satisfaction of their liens. Until they did so, by an order of sale or of renting, the possession was in Miller, with

the right to gather the crops or collect the rents, and a sale under a decree in the cause was a sale of all the interests of all the parties to the suit. The railroad company could acquire, for its purposes, part of this land, as against the lienees, by a notice to the tenant of the freehold, an assessment by commissioners, and a payment into court of the ascertained amount of compensation. No bargain with Miller—no acquiescence by or arrangement of Miller—could affect the docketed liens any more than his sale to any other purchaser. He alone would be bound. To save corporations the investigations of titles, and delay in the prosecution of their work, they are authorized to pay into court the ascertained compensation. If they choose to pay to the party they suppose to be entitled, it is at their peril. Under the Virginia statutes, the title does not rest in the corporation until the money is paid. Assuming, for the moment, Miller's title to have been unincumbered, even against him, the acceptance of a general promise, though in writing of a private person, authorized or not by the corporation, that if the corporation would comply with the law for the assessment of compensation, and that the compensation should be promptly paid, would not pass Miller's title or substitute Ashby's engagement for the duty of the corporation to comply with the law to acquire title. Ashby's stipulation was, at most, an additional assurance that the corporation would proceed regularly to acquire the title, in consideration that the work might progress in advance of the proceedings to be had in court. Continuing assumption that Miller's ownership was without incumbrance, he might have acquiesced in the possession of the corporation of the roadbed, until large expenditures were made upon the land, when, upon his seeking to regain its possession because of the non-payment of the compensation, he would be informed that he permitted this possession until innocent persons had subscribed largely in stock to these expenditures, and until the traveling

public had become interested to an extent that public policy would forbid an actual eviction ; and Miller would, by injunction, be restrained from prosecuting his law actions of ejectment or unlawful detainer, upon terms that the corporation would promptly institute and press proceedings, under the statute, to ascertain and pay the compensation. The court of appeals, upon application to revise a similar order of the circuit court of Clarke county, have sustained this view. Besides, if the corporation acquired title, as is claimed, from Miller's negotiation with Ashby, the real estate became personally, a chose in action, and only liable to the lien of a fi. fa. The court never having been asked to rent this land, the creditors are only entitled from the day of sale, and then to the proceeds of the sale. At their instance, the court ascertained the real estate of Miller, and the liens thereon, to which there were no exceptions. All of the real estate was sold, and the sale was confirmed without exceptions. The sale included the paramount interests of the lienors and of Miller. No reservation was made. Nothing was done on the road for six years, and for five years after the decree of sale. Might it not, in 1874,—the date of the decree of sale,—when the work seemed at an end, have been thought better to sell the whole property, than to have reserved a strip of 60 feet wide all through it ? The creditors clearly had the right to have sold it. They did so, and subsequent events only show that it was unfortunate for the creditors. But contracts are not to be affected because, in the light of subsequent events, they may have proved injudicious. The evidence as to the value of the land, only tends to prove that it did not bring enough, and would have been pertinent upon a motion to set aside the sale, but not now. If it weighs at all upon the extent of the sale made, it is but a feather's weight. It is conceded that the roadbed was embraced, and the damages to the residue of the land are now being suffered by the purchasers, and their suffering will be continued indefinitely. It

is absolutely certain, upon the facts, that they never purchased subject to such an incumbrance.   Upon what principle of equity could the purchasers be deprived of these damages? I have shown how the profits of the land, up to the sale, cannot go to the judgment creditor ; so that, in any event, these judgment creditors would be entitled only to the area of the land taken, and that was expressly sold with the rest.   In addition to all this, as has been seen, the argument against the purchasers has not gone so much to the question of fact as to what was sold, for all the land was embraced, and no reservation was made, as to the propriety of such sale, and to the hardship resulting to the creditors.   If it had been a sale, for a grossly inadequate sum, of the whole tract, and of all the interests therein, for too little, by the amount of these damages and compensation for the land taken, upon what principle of equity can you take from the purchaser so large a part of the consideration of his purchase, and hold him for the performance of the residue of the contract ?"

From this opinion the judgment creditors of H. M. Miller appeal.   Affirmed.

*Giles Cook & Son,* for appellants.

*S. S. Turner, H. H. Denning,* and *R. L. Buck,* for appellees.

BY THE COURT.

Upon appeal from the decree of the circuit court of Warren county pronounced February 24, 1882, on an appeal from the order of the county court of said county, rendered at its October term, 1881, in the cause then therein depending, of the Shenendoah Valley Railroad Company v. H. M. Miller : This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the

decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that there is no error in the said decree.     Therefore, it is decreed and ordered that the same be affirmed, and that the appellants do pay to the appellees damages according to law, and their costs by them in this behalf expended.     Which is ordered to be certified to the said circuit court of Warren county.