## STINCHCOMB et al. v. OKLAHOMA CITY.

No. 9852—Opinion Filed May 10, 1921.

(Syllabus.)

**1. Eminent Domain—Constitutional Provision—Time of Taking—Compensation.**

The taking of private property for public use is the exercise of sovereign power, and is controlled, in this state, by the provisions of section 24, art. 2, of the Bill of Rights of our Constitution, and these provisions must be construed strictly in favor of the owner and against the condemning party, and until the compensation has been paid to the owner, his property cannot be disturbed, nor his proprietary rights divested; hence, there can be no legal taking under the Constitution until the compensation, as fixed by the commissioners, is either paid to the owner of the property, or into court for him.

**2. Same—Condemnation Proceeding—Trial —Instruction.**

In a condemnation proceeding to take private property for public use, in which commissioners were appointed and on March 9, 1917, the said commissioners filed their report as such commissioners fixing the amount of the damage due to the owner for such taking, and afterwards, under written stipulation, the amount of the award is paid to the owner by the condemning party and in pursuance of said stipulation, and on April 25, 1917, said award was paid to the owner by the condemning party, the trial court gave to the jury, trying said cause on appeal from said award, the following instruction:

"You are instructed that under the evidence in this case the appropriation of the land of the defendants took place on the 9th day of March, 1917, and that in fixing the damages suffered by the defendants, you are to fix them as of that date."

The said instruction being excepted to by the owner of the land, the same is brought to this court on appeal and is assigned and argued as error in this court.

Held, that the giving of said instruction wherein the time of the appropriation of the owner's property and fixing the time as of which the value of the property is to be estimated to be as of the date of filing of the report of the commissioners, and on to wit, March 9, 1917, instead of fixing the time of the appropriation of the property and as of which the value of the property taken is to be estimated, to be the date that the money was paid to the owner, and on to wit, April 25, 1917, constitutes a substantial violation of a constitutional right of the owner of the property condemned, and is therefore reversible error. (Section 6005, Rev. Laws 1910.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Condemnation proceeding by Oklahoma City against land of Lee Stinchcomb and another for waterworks use. Upon trial by jury, defendants being dissatisfied with judgment, they bring error. Reversed and remanded.

G. A. Paul and T. G. Chambers, for plaintiffs in error.

Ruth and Price, for defendants in error.

ELTING, J. This suit is the outgrowth of a condemnation proceeding commenced in the district court of Oklahoma county, Oklahoma, by the city of Oklahoma City to condemn 83.77 acres of land belonging to the plaintiffs in error, Lee Stinchcomb and Sarah A. Stinchcomb, to be used by the city for constructing a system of waterworks to be used by said city.

The petition for condemnation by the city was filed on the 2nd day of February, 1917. Commissioners were appointed and took the oath of office on March 6, 1917, and on March 9, 1917, said commissioners filed their report in the district court, wherein they allowed the sum of $5,711.60 as the value of the land taken and the additional sum of $500 resulting as consequential damages by reason of the appropriation, making a total of $6,211.60.

On the 2nd day of April, 1917, the defendants below filed their demand for a jury trial. Before said cause was tried a stipulation was entered into by the parties whereby the city paid the amount of the award directly to the defendants without prejudice to the rights of either party, and in lieu of the payment of the award to the clerk. The payment was made on the 25th day of April, 1917. The cause came on for trial the 20th day of September, 1917, before Hon. John W. Hayson, Judge.

On the 25th day of September, 1917, the jury returned a verdict in favor of the defendants below, plaintiffs in error herein, in which were fixed the sums of $7,539.30 for the land taken and $2,460.70 for damages to the remainder, making a total amount of the verdict $10,000. A motion for a new trial was filed and the same was overruled. Appeal to this court was prayed for.

The petition in error contains the following assignments of error:

"First. That the said court erred in overruling the motion of plaintiffs in error for a new trial.

"Second. That the judgment of the court is not sustained by the law.

"Third. That the judgment of the court is not sustained by the evidence."

The plaintiffs in error, defendants below, have perfected their appeal in this court by filing a case-made and their petition in error.

They have also filed a brief in support of their petition in error.

The plaintiff below, defendant in error herein, has not filed its brief and has shown no cause, to this court, for such failure.

To get the contentions of the plaintiffs in error set forth herein, we will quote the following portion of the plaintiffs in error's brief, found on pages 5 and 6:

"The lower court in the trial of this case, among other instructions, gave instruction No. 8, directing the jury to consider the 9th day of March, 1917, as the date of the appropriation and the date upon which to fix the amount of the damages then due to the defendants; said instruction No. 8 being as follows:

"'You are instructed that under the evidence in the case the appropriation of the land of the defendants took place on the 9th day of March, 1917, and that in fixing the damages suffered by the defendants, you are to fix them as of that date.'

"To the giving of this instruction the defendants excepted for the reason that as we understand the law of eminent domain it was an erroneous instruction.

"The commissioners who were appointed on the 6th day of March, 1917, did file their report on the 9th day of March, 1917. At the time the condemnation proceeding was begun the defendants had some fifty (50) acres planted in wheat, and on the 9th day of March the same was about two and one-half months from maturity. (See R., p. 80.) This wheat, on the 9th day of July, 1917, was sold for the sum of five thousand seventy-three dollars and eleven cents ($5,073.11). (See R.

p. 421.) And for the purpose of ascertaining what the value of the growing crop was at the time of taking dates become a very important matter, for the wheat was ready to mature on or about the 25th day of May, 1917, so that the value of the wheat on March 9, 1917, would have been an entirely different value than on April 25, 1917, the date when, as defendants contend, the city appropriated this land to public use.

"The court below denied the defendants the right to show the value of the wheat on the 25th day of April, 1917, and as heretofore stated limited the jury in the consideration of the damages to be allowed to the defendants by express instruction, to the time of the filing of the report by the commissioners appointed in the condemnation proceeding. The defendants maintain that this was error of law occurring upon the trial, to which they duly excepted."

The following is section 24 of art. 2 of our Constitution, pertaining to the taking of private property:

"Sec. 24. Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

In their brief the plaintiffs in error rely upon the following portion of the above quoted section of the Constitution as being determinative of the time when the damage should be estimated, the time of appropriation, and that being the time of payment:

"Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the pro-

prietary rights of the owner divested."

The court, in his instruction to the jury, and being instruction No. 8 and which is particularly complained of by the plaintiffs in error, fixed the 9th of March, 1917, as the date as of which the damages are to be fixed as suffered by the defendants below, plaintiffs in error herein. The plaintiffs in error contend that the damages suffered by the defendants below, plaintiffs in error herein, should be fixed as of April 25, 1917, the date that the monies were paid to the landowner. The question raised herein is one which it does not appear that this court has as yet ever decided, unless it be held to have been decided in the case of Edwards v. Thrash, hereinafter cited and quoted.

In addition to the section of the Constitution heretofore quoted, sections 1400 and 1401 of the Revised Laws of 1910 (Vol. 1) are also relative to the taking of private property for public use. The chapter is on Corporations and Railroads and section 1404 makes them applicable to all corporations having the right of eminent domain. The statutory provisions are binding unless found to contravene the provisions of the Constitution. Section 1401 provides that the owner is entitled to his compensation when possession of property condemned is taken. The inference to be drawn from this would be that any entrance upon the property by the one condemning before payment of award would be a trespass.

Mr. Justice Williams in the case of Edwards v. Thrash, 26 Okla. 472, 109 Pac. 837, discussing the cited provision of the Constitution on taking of private property for public use, uses the following language:

"Whilst the first clause of section 24, art. 2, supra, provides that private property shall not be taken or damaged without just compensation, an accompanying clause in this same section provides that, until compensation shall be paid to the owner or into court for the owner, the property of the owner shall not be disturbed or the proprietary rights of the owner divested. Does this latter clause require compensation to be paid to the owner or into the court for the owner where the damages are merely consequential? The word 'disturb,' according to Mr. Webster, means 'to interrupt a settled state of,' and according to the same authority 'proprietary' means 'belonging or pertaining to a proprietor, considered as property, owned;' and the words 'the property shall not be disturbed or the proprietary rights of the owner divested,' seem to mean that possession thereof shall not be taken nor his property taken, nor shall the title thereof be divested, until compensation therefor has been first paid to the owner or into court for the owner. This was the controlling construction in the state of Missouri at the time of the adoption of this clause

in the Oklahoma Constitution, and, when there was no such provision in force in any other state where a contrary construction prevailed, that of the highest court of Missouri should be especially persuasive."

The crop of wheat, as we gather from the record, was upon the land actually taken by the city, and the measure of damages that seems to have been followed was the value of the lands taken as a fee. We find the following rule laid down in the note found on page 750 of 15 Cyc.:

"If the owner recovers damages measured by the entire value of the property, he is not entitled, in addition, to the amount of the rental." Ireland v. Metropolitan El. Ry. Co., 52 N. Y. Super. Ct. 450.

We find the following on pages 758 and 759 of 15 Cyc.:

"In determining the compensation or damages to which a person is entitled whose land or a part thereof has been taken under the power of eminent domain, it is proper to consider the value of crops, trees, grass, etc., growing on the land at the time of the taking and thereby injured or destroyed. So a lessee is entitled to the value of crops which are injured or destroyed by the appropriation of the leased premises for a public improvement."

Hence, the rule for recovery seems to be, as we deduce it from the statement of these two propositions, the market value of the land taken at the time of the taking, and in arriving at such market value the growing crops may be taken into consideration in fixing that value. Hence, the condition of the crops at the time of the taking is an important factor to be considered.

The rule seems to be laid down in 15 Cyc., page 719, in the following language:

"The fundamental doctrine that private property cannot be taken for public use without just compensation, requires that the owner shall receive the market value of his property at the time of the taking. Upon this the courts are well agreed, but owing to the diversity of the various statutes in the several states there is much apparent conflict upon the question of what constitutes a taking within the meaning of the rule. Generally speaking the land may be regarded as taken at that moment when by the terms of the statute the owner is divested of his title and it vests in the condemning party."

The following is from 15 Cyc., pages 785-86:

"It is a rule of universal application that title does not pass out of the owner and vest in the condemning party until payment of compensation for the property taken, where

payment before taking is expressly required by the Constitution, or where the Constitution requires as a prerequisite to the taking that payment shall be made to the owner or into court for him, or where the charter of the condemning company or general statutes relating to eminent domain contains the express provision that title shall remain in the owner until compensation is paid. So under constitutions which contain no express requirements that payment shall precede taking but prohibit the taking of private property for public use without just compensation, title does not pass before payment, except where the statute expressly provides that title shall pass before compensation and makes adequate and certain provision for such compensation. Where the award has been paid and accepted, title, or an easement, as the case may be, vests in the condemning party."

See, also, authorities cited in the notes under the above quotation from the text of Cyc.

The following is note 73, found on page 785, 15 Cyc.:

"Where an appeal is taken from the award of appraisers, payment to the clerk of the damages awarded operates only as a license to the railroad company to take possession of the lands so appropriated. The title thereto does not vest in the company until it has fully paid the damages finally assessed and adjudged in favor of the owner upon the final determination of the appeal: Terre Haute, etc., Co. v. Crawford, 100 Ind. 550; Lake Erie, etc., Ry. Co. v. Kinsey, 87 Ind. 514."

To the same effect are the following cases: Rees v. Chicago, 38 Ill. 322; Jones v. Miller (Va.) 23 S. E. 35; Southern Ry. Co. v. Gregg, 101 Va. 308; Bensley v. Mountain Lake Water Co., 13 Cal. 307; California Southern Ry. Co. v. Colton Land & Water Co. (Cal.) 2 Pac. 38.

The taking of private property for public use being against the will of the owner and by force of law, the provisions of the law must be strictly complied with. See, in this connection, Watkins v. Board of Commissioners of Stephens Co., 70 Oklahoma, 174 Pac. 523. Also case of Bensley et al. v. Mountain Lake Water Co., heretofore cited.

If the rule established by the Indiana cases is accepted as the true rule, and the nature of the right acquired by the condemning corporation up until just compensation is determined by the jury is merely a license and title does not become fixed until the compensation is finally determined and paid, we can see no reason why the owner could not show the condition of his crops and bearing on the question of value, up until

the time of the trial, because there would be no final taking until that time, under this rule. We are, however, not deciding that proposition. The plaintiffs in error are not contending that they are entitled to show the condition of the crop after the 25th of April, but only up until that time.

The rule seems to be discussed fully in the following case: Lafferty v. Schuylkill River East Side Ry. Co. (Pa.) 3 L. R. A. 124:

"When a railroad company locates its lines of road over the lands of private owners it secures thereby a right to enter upon and occupy the land covered by such location.

"The actual entry cannot be made until the damages accruing to the owner shall be paid or secured; but the means for ascertaining the damages are provided by law, where the parties cannot agree upon them: and the owner cannot prevent the exercise of the right of eminent domain by the company.

"But while the owner has notice, by the location of the road over his lands, of the purpose of the company to appropriate so much as the line of the road covers, he has no notice of the time when actual possession will be required. He may doubtless abandon the land covered by the line as located to the company and proceed to have his damages assessed; or he may wait for the company to take the initiative and continue meantime to occupy and cultivate it. If he takes the latter branch of the alternative, the crops planted after the location and before notice or bond given by the railroad company, are proper subjects for compensation.

"The reason for this is that it may be months or even years after the location of the line before the company will be ready to enter upon the land for purposes of construction or to take the steps necessary for the assessment of damages, and the owner has a right to remain in possession until actual appropriation of his land by the company. This was held in Gilmore v. Pittsburgh Railroad Company, 104 Pa. 275, and has been recognized in other cases.

"If, therefore, Krider had made no lease of his land, but continued to cultivate it himself he would have been entitled to claim damages as well for the loss of growing crops as for the injury done to the land, provided the crops had been planted before bond given or notice of an intent to enter upon the construction of the road."

Also the case of Gilmore v. Pittsburgh Ry. Co., 104 Penn. St. 281;

"The whole work in constructing the road on the land of the plaintiffs was in the month of June, 1879. Corn and potatoes were then growing on it. They were probably planted in April or May. Their destruction in making the road was claimed as an item of damage. The evidence covered by the second assignment appears to have been admitted

under the view that no dameges should be
allowed for this item, if the plaintiffs knew.
when planting them, that stakes indicating
location had previously been set there, and
the defendant was engaged in constructing
the road on the adjoining lands.

"This is a misapprehension of the law,
under the undoubted facts of the case. Con-
ceding that stakes had been set on the
ground either in 1868 or 1869, or not until
1871, or at each time, as it is shown two
lines were run, the defendant thereby ac-
quired no right to take possession and occupy
the lands. Actual payment of damages or se-
curity therefor duly approved must precede
the taking. The plaintiffs were under no
legal obligation to refrain from using their
property by reason of any expectation that
the defendant might afterwards take it. Al-
though the compensation is usually called
damages, yet it is in fact the consideration
or price of a privilege purchased. Until the
company made a permanent location, it was
not liable for damages under the statute.
When these crops were planted it had not
made such location, nor had it given the
required security. The bond was not filed
until in June, 1879; whether before or after
the land was taken, or when the bond was ap-
proved, does not appear. The defendant ac-
quired no right to the possession until the
security was approved by the court of com-
mon pleas. If the plaintiffs had refrained
from using their lands for the eight or ten
years which intervened between the running
of the first line and the final location of
the road, it is very clear they could not have
recovered damages for that interval of time.
Until final location was made, the defend-
ant was not in position to compel a sale of
the privilege. Without payment or security
it had no right to take possession. Prior
thereto the plaintiffs' full right to the en-
joyment of their property remained unim-
paired. It follows the court erred in re-
ceiving the evidence covered by the second
assignment."

It might be suggested that since the
plaintiffs in error, defendants below, have
failed in their brief to set out from the rec-
ord and proofs such a state of facts as indi-
cates that the giving of the instruction
No. 8, complained of, worked material injury
to the plaintiffs in error, and since they
failed to do this, this court can, therefore, act
upon the presumption that no material injury
was done, and hence that the error was
harmless. We do not, however, view this to
be the law. Our statute on harmless error is
section 6005, Rev. Laws 1910, vol. 2, and
reads as follows:

"No judgment shall be set aside or new
trial granted by an appellate court of this
state in any case, civil or criminal, on the
ground of misdirection of the jury or the
improper admission or rejection of evidence,
or as to error in any matter of pleading or

procedure unless, in the opinion of the
court to which application is made, after
an examination of the entire record, it ap-
pears that the error complained of has prob-
ably resulted in a miscarriage of justice, or
constitutes a substantial violation of a con-
stitutional or statutory right."

We have not examined the entire record.
We have examined it partially. The record is
very long. A great deal of proofs were given
pro and con upon the value of the land. We
cannot say from what examination we have
made that the instruction was harmless,
and did not probably result in a miscarriage
of justice. They proved that the wheat
made something like 23 bushels per acre.
Who can say that the limiting of the jury to
March 9, 1917, did not probably result in a
miscarriage of justice? This provision of the
statute has this alternative provison:

"Or constitutes a substantial violation of
a constitutional or statutory right."

Our contention is, that this last provision
is imperative and exclusive of the preceding
provision. The question raised by this as-
signment of error is that a substantial con-
stitutional right of the plaintiffs in error
was violated by this instruction, and the
only question is, Was it a substantial viola-
tion? Words and Phrases, vol. 4, page 750,
defines "substantial" as follows:

" 'Substantial' means belonging to sub-
stance; actually existing; real; * * * not
seeming or imaginary; not illusive, real; so-
lid; true; veritable.' Elder v. State, 162 Ala.
41, 50 South. 374 (citing Wobst. Int. Dict.)"

The following is from 37 Cyc., page 507:

"As used in reference to the right of a
party to an action to appeal from an order
affecting a substantial right, an essential le-
gal right, not merely a technical one; some-
thing to which, upon proved or conceded
facts, a party may lay claim as matter of
law—which a court may not legally refuse,
and to which it can be seen that the party
is entitled, within the well-settled rules of
law; some legal right to which the party who
appeals. claims to be entitled; a legal right;
one which is protected by law. (Substantial
right; Law Depriving Accused of as Ex Post
Facto, see Constitutional Law, 8 Cyc. 1031.)

Under the above definition of a substantial
right it would seem that what is meant by a
substantial violation of a statutory or con-
stitutional right would be a violation of a
right granted by statute or by constitutional
provision, and is such a right that a party in
interest may invoke it and upon the request
the court has no discretion but to grant it
and hence, the refusal to grant the request is
error, and it would seem this is so, without
regard to whether the refusal did or did not
affect the interests of the one asking it.

The plaintiffs in error contend in their brief that this instruction was prejudicial. If the Constitution means that the property cannot be taken by the city until compensation therefor has been paid, nor the proprietary rights disturbed nor title taken without the compensation being first paid, then why is it not substantial invasion of a constitutional right of the plaintiff when the jury is denied the right to consider the value of said land up until the title passed?

The following is instruction No. 6, given by the rial court:

"You are instructed that in determining the fair market value of the land taken, it is your duty to take into consideration the value of the growing wheat crop upon the land, and in determining the value of said crop you are instructed that the wheat crop was a part of the real estate at the time that it was taken, but it would be your duty to determine and fix what was the reasonable market value of said growing wheat crop at the time the land was taken in order to determine the fair market value of the land. And in this connection you are instructed that certain evidence has been permitted to go to you with reference to the cost of preparing the ground and sowing the crop and the amount of the yield. This evidence was permitted to go to you only for the purpose of determining the fair market value of the land at the time that it was taken, and the value of the crop actually harvested would not be the measure of damages, but the measure would be the fair market value of said growing crop together with the land in the condition it was at the time it was taken by the plaintiff.

"Given and excepted to by deft.

"John W. Hayson, Judge."

In this instruction the court gives the measure of damages and instructs the jury as to what is to control them in considering the growing crop. Referring to the proofs that were permitted to go to the jury pertaining to said crop, the court tells the jury that in considering the crop for the purpose of estimating the value of the land taken, he instructs them to consider the reasonable market value of the growing wheat crop at the time the land was taken in order to determine the fair market value of the land. Then the court follows this instruction up by giving the objectionable instruction No. 8, by fixing the time of the taking or appropriation of the land to be at a time entirely different under the facts in this case, from that when the Constitution says that there can be a legal taking; hence, the giving of instruction No. 8 cannot be held to be in good reason anything but a substantial violation of a constitutional right of the plaintiffs in error herein. If the wheat crop had matured prior to April 25, 1917, the plaintiffs in error would have had the right to harvest and

dispose of said crop. They had the proprietary right to and owned the wheat crop until April 25, 1917. It is the duty of this court, as the writer of this opinion views it, to interpret the rights of these plaintiffs in error under this constitutional provision, and apply the correct rule. The market value should be determined as of the date of the taking, and under our Constitution the taking is not until the money is paid.

This rule, when fixed by this court, might sometimes work to the advantage of the condemning party and sometimes to the advantage of the owner of the property, and when the rule is fixed by this court, then it is as much the constitutional right of one party, and as a mattter of right to invoke the rule, as the other, and as either may deem involves his interest, and when either so invokes it, he is entitled to it as a matter of strict legal right.

We quote the following from the case of Twin Lakes H. Gold Min. Syndicate v. Colorado M. Ry. Co. (Colo.) 27 Pac., quoting from page 260:

"It is ably urged in argument that the third and fifth instructions were erroneous in the clauses where it was said that the value of the land taken and the damages to the residue should be assessed 'in accordance with the situation of the property and conditions existing at that time,' viz., at the date of filing the petition. The language in our Code of Civil Procedure, sec. 253, is 'In estimating the value of all property actually taken, the true and actual value thereof at the time of the appraisement shall be allowed and awarded,' etc. The statute is imperative, and the instruction is in violation of it and technically incorrect. In view of what, according to the record, 'the evidence tended to show' we cannot say the error was harmless. Whether or not there was any change of value between the date of the petition and the time of trial is not shown. As it was erroneous and counsel for plaintiff in error insist that it was prejudicial, the judgment should be reversed, and the cause remanded." (See, also, 47 Kan. 571.)

If the city had desired that the damages be estimated as of March 9, 1917, the date the commissioners filed their report, and they had gone to the clerk of the court and paid the amount of the award to the clerk of the court on that day, then they would be in a position to invoke the rule, but they did not pay the money until April 25, 1917, and we have a right to presume that possibly the prospects of the wheat crop at that time had something to do with the city making the payment on that date. They could have delayed making the payment until they were ready to take possession of the property to begin the improvement. But if they had done so, and delayed beyond the harvest of the

wheat crop, the crop would have gone to the owner of the land.

To repeat, we have· not examined this entire record with the view of determining whether or not this instruction was a harmless error, and we do not think that we are required to do so under the state of this record, since we hold that the instruction No. 8 was in contravention of a substantial constitutional right of the plaintiffs in error, and, therefore, that the case should be reversed, and the same is reversed and remanded for a new trial not inconsistent with this opinion. .

HARRISON, C. J., and JOHNSON, MILLER. and KENNAMER, JJ., concur.