## CITY OF TULSA v. HORWITZ.

No. 17974. Opinion Filed May 29, 1928.

(Syllabus.)

**1. Eminent Domain—Value of Land Taken and Damages to be Estimated as of Date Money Paid.**

In condemnation proceedings to take private property for public use, when trial is had before a jury on appeal from the award of commissioners, the date upon which the value of the property taken, and the damage, if any, to that not taken is to be fixed, is the date upon which the money awarded by the commissioners is paid to claimant, or into court.

**2. Same—Refusal to Instruct on Proper Date for Estimate of Damages Reversible Error.**

In such case, it is reversible error to refuse to instruct the jury as to the proper date when the damages are to be estimated, where the evidence as to the value of the property covers a long period of time, and shows substantial variation in value.

**3. Same—Range of Inquiry as to Value of Property in Discretion of Court.**

The extent of the range of inquiry to be permitted regarding the value of property taken or damaged in eminent domain proceedings is largely in the discretion of the trial court.

**4. Same—Elements of Damages.**

The elements of damages where private property is taken or damaged for public use includes all damages or injuries arising from the exercise of the right of eminent domain which cause a diminution of the value of private property, whether this results directly to the property or is but an interference with the right which the owner has to the legal and proper use of the same.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Luther James, Judge.

Action by City of Tulsa against William Horwitz in condemnation of land for public alley. Demand of defendant for jury trial for assessment of damages. Judgment for defendant, and plaintiff appeals from amount of award Reversed.

H. O. Bland, Harry L. S. Halley, H. M. Gray, and Clara W. Harwood, for plaintiff in error.

E. M Connor and E. Jacobs, for defendant in error.

DIFFENDAFFER, C. This is an action begun in the district court by the city of Tulsa to condemn a piece of land off of the southwest corner of lot 1 in block 6, original town site of the city of Tulsa.

The tract condemned was triangular in form, and its dimensions are 19.5 feet on the west, 98.5 feet on the south, and 100.5 feet on the north and east side, that is the side which made the hypotenuse of the triangle. Defendant owned a tract 50 feet by 140 feet in the southeast corner of block 6, and one 100 by 140 feet in the southwest corner of the block. An alley 20 feet wide running north and south separated the two tracts. The block is bounded on the west by Boston avenue, and on the east by Cincinnati avenue. What was at one time Fourth street, afterwards changed to Davenport street, was on the south side of the block. Sometime about 1902, Fourth street from Cincinnati to Boston avenue was by ordinance of the town council abandoned and vacated for the purpose of allowing the use thereof as a right of way for the M. K. & O. Railway, and, at the time these proceedings were commenced, was being used by the M. K. & T. Railway Company as a right of way. Upon this right of way, the railroad company had constructed two tracks running the entire length of the block, and a third track or switch between the north track and the lot in controversy, and between this switch and the lots there had been constructed a warehouse about 180 feet long, and about 28 feet wide, extending across and closing the south end of the alley running north and south through the block Defendant in error, about 1919, made arrangements with the owner of this warehouse for the purchase thereof, and for a transfer of the lease of the ground upon which it stood to him, but the actual transfer thereof was not made until after these proceedings were commenced. Arrangements were made between the railway company and the city for the use of that part of the railroad right of way lying between the warehouse and defendant's east lot necessary to open an alley 20 feet wide extending eastward from the south end of the alley to Cincinnati avenue, and these proceedings were for the condemnation of the triangular tract above described off the southwest corner of defendant's east lot, which was necessary to open the alley. Commissioners were appointed by the court to view the premises, and after their report was filed, defendant demanded a jury to assess the damages. Trial was had, resulting in a verdict assessing the damages at $2,000. The city filed a motion for new trial, which was overruled and judgment entered upon the verdict. From this order and judgment, the city of Tulsa appeals.

There are 13 assignments of error, but those relied upon and presented in the brief are all included in Nos. 1, 5, 6, 8 and 10, No. 1 being the alleged error in overruling motion for new trial, and the others being alleged errors of law occurring at the trial.

The first error complained of in the brief is the refusal to give requested instruction No. 7, as follows:

"You are instructed that the burden of proof in this case is upon the landowner to establish by competent evidence the fair reasonable market value of the land in controversy at the time of the taking of this property by the city of Tulsa under the condemnation proceedings, which was on the 26th day of May, 1923."

It is contended that, by this requested instruction, plaintiff in error endeavored to have the court fix the date that the damage should be determined as of the date the money was paid into court. This court has held that to be the proper date. Stinchcomb v. Oklahoma City, 81 Okla. 250, 198 Pac. 508. It was there held that it was reversible error to instruct the jury that the appropriation of the land took place on the 9th day of March, 1917, the date of the filing the report of the commissioners appointed by the court to view the premises and assess the damages, instead of fixing the date of such appropriation as of the date the money was paid to the owner, to wit, April 25, 1917.

The instructions given nowhere told the jury the date upon which the property was taken. It seems well settled in this state that the measure of damages in such cases is the market value of the property actually appropriated, together with the decrease, if any, caused by such taking in market value of that remaining. The general rule as stated in 20 C. J. p. 757, is:

"Where a street or highway is laid out through a tract of land, the owner is entitled to compensation not only for the value of the land actually taken, but also for the damage, if any, accruing to the remainder, as measured by the difference in the value of the entire tract before and after the taking. It is commonly held that the proper elements of damage are whatever tend to make the land of less value after the location than it was before."

It would seem important both to the owner of the land and the municipality, that the jury should understand as to the date upon which compensation is to be measured. In the instant case, it is contended by defendant in error that instruction No. 2 given by the court fixes the time for determining the damage. This instruction in the part cited by defendant in error was:

"He is entitled to such a sum as will fully and fairly compensate him for the lessened market value of the premises occasioned by such taking. This market value depends not wholly upon the use to which the owner is putting it, but upon the use or uses to which it is available at the time it is taken."

The evidence tended to show value of the property varying from April or May, 1919, when it was purchased by defendant in error, some four years before it was taken, down to the date of the trial in March, 1926, some three years after it was taken. The value shown by the evidence varied at different times from about $13,000 to about $30,000. We think, in view of this evidence, it was the right of the city to have the jury instructed in plain and unambiguous language the proper date upon which to fix the damages, and that the instruction given did not so fix the date.

Defendant in error contends that the failure to instruct on this point, if error, was harmless, and that under the whole record, the jury could not have been misled. The only thing appearing in the record by which the jury could have received any intimation as to the proper date from which to fix the damages was a remark made by the court, during the course of the trial, as follows:

"These damages must be fixed as of the date of the condemnation, and not at the time of the report of the commissioners. The damages must be fixed as of the date of the payment of the condemnation money."

The only thing in the record fixing the date when the money was paid to the court clerk was statements of counsel in the course of the trial to the effect that the money was paid into court May 26, 1923. When the court was asked to instruct the jury that that was the correct date, he refused the instruction. No instruction fixing the wrong date was given, as was the case in Stinchcomb v. Oklahoma City, supra, but no date at all was given. If, as was the case in Stinchcomb v. Oklahoma City, supra, those learned in the law misapprehend the meaning of the Constitution and laws of the state as to when land is taken under the procedure in eminent domain, how easily may a jury be misled where the evidence as to the value of the property covers a range of nearly seven years? We think it was prejudicial error to refuse to instruct as to the date when the property was taken.

Complaint is also made of the admission of evidence of what consideration was paid by defendant in error for the land involved. Concerning this, Mr. Horwitz was asked:

"By Mr. Connor: Q    Mr. Horwitz, please

state what was the consideration paid by you in March, 1919, for the east 50 by 140 feet of that property. By Mr. Bland: We object as incompetent, irrelevant and immaterial, and not the proper way of fixing the value of the property. The Court: Overruled. Mr. Bland: Exception. A. About $5,000."

The plaintiff in error requested an instruction in effect that the jury should not consider the price paid for the land in 1919.

In 20 C. J. p. 985, it is said:

"The basis for the recovery of compensation for land actually taken being its market value, any relevant and material evidence of such value is admissible, if competent under the general rules of evidence Subject to this limitation, no evidence should be excluded which an ordinarily prudent man would take into account before forming a judgment as to the market value of property which he is about to purchase."

"Evidence as to the price paid for the property sought to be taken is generally held admissible as some evidence of its market value, although there is authority to the contrary, especially where the purchase was so remote in point of time from the condemnation proceedings as to afford no fair criterion of present value."

The rule seems to be that much is left to the discretion of the trial judge in determining whether the time was too remote. W. F. & N. W. Ry. Co. v. Holloman, 28 Okla. 419, 114 Pac. 700; Town of Kirkland v. Cochran (Wash.) 151 Pac. 1082; Patch v. Boston, 146 Mass. 52. While the time was somewhat remote in the instant case, we cannot say, under the rule above stated, that the admission of this evidence was error.

The third proposition presented is that the court erred in refusing instruction No. 11, which is:

"You are further instructed that you are not to consider, in arriving at the amount of owner's damage, any possible damage that might be done to lot 2, in block 6, original town of Tulsa."

The evidence shows that the two lots were separated by a 20-foot alley, but that they were suitable for, and intended to be, and had been used in, the pipe supply business; were bought at the same time, and intended to be used for that purpose, and had always been used together, so that the taking of a part of lot 1 necessarily affected the value of lot 2 to some extent. In Arkansas Valley Ry. Co. v. Witt, 19 Okla. 262, 91 Pac. 897, it was held:

"Under the statutes of Oklahoma, damages in condemnation proceedings for railroad right of way purposes are not limited

to the real estate taken and injured, but may be such damages as the owner actually sustains to either his real or personal property by the appropriation of his land, and by reason of such railroad."

Under the rule there stated, the refusal of the requested instruction No. 11 was not error.

Defendant in error next complains of the refusal of the court to give certain instructions, which were to the effect that the jury could not consider any damage that might have been done to the property by the fact of the construction of the alley, but could consider only the damage done by the actual taking of the strip; that the jury could not consider the fact that after the strip was taken and the alley opened, lot 1 no longer abutted the railroad right of way. Farrell v. Boston, 180 Mass. 443, is cited in support of the latter instruction, but we think that case is not in point, in that in that case the railroad tracks were removed entirely, but no part of claimant's land was taken in that connection. We think N. Y., N. H. & H. Ry. Co. v. Blacker (Mass.) 59 N. E. 1020, where damages were allowed for loss of railroad facilities, is more nearly in point. Peel v. City of Atlanta, 85 Ga. 138, 11 S. E. 582, and other similar cases, are cited by plaintiff in error, but they are also cases where no property was actually taken, or invaded, and hence, in that respect, not in point. Hoag v. Switzer, 61 Ill. 294, is also cited and relied upon by plaintiff in error. An examination of that case will disclose that it was one where no lands of the claimant were actually taken, and a constitutional provision different from ours was then in force in that state. Section 11 of art. 13 of the Bill of Rights of that state, then in force, provided:

"Nor shall any man's property be taken or applied to public use, without the consent of his representatives in the General Assembly, nor without just compensation be made him."

Our constitutional provision, section 24, art. 2, Bill of Rights, is as follows:

"Private property shall not be taken or damaged for public use without just compensation. * * *"

The elements of damages under constitutional provisions similar to ours are stated in 20 C. J. p. 674, where it is said:

"They include all damages or injuries arising from the exercise of the right of eminent domain which cause a diminution in the value of private property, whether this results directly to the property, or is but an interference with the right which the owner

has to the legal and proper use of the same."

This rule, in substance, has been followed in this state. St. Louis & S. F. Ry. Co. v. Ledbetter, 83 Okla. 78, 200 Pac. 701; City of Muskogee v. Hancock, 58 Okla. 1, 158 Pac. 622.

All the other assignments of error relied upon are of a similar character, or raise substantially the same questions upon objection to introduction of evidence, and we deem it unnecessary to discuss them. We think it sufficient to say that there was no error in admitting the evidence complained of, nor in refusing the requested instructions Nos. 12, 13, 14, and 20.

For the error in refusing the instruction as to the date when damages are to be estimated, the cause should be reversed and remanded for a new trial.

BENNETT, LEACH, FOSTER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. p. 831, §265; 10 R. C. L. p. 214.    (2) 20 C. J. p. 1018, §409.    (3) 20 C. J. p. 987, §388.    (4) 20 C. J. p. 674, §140.