## CITY OF TULSA v. HORWITZ.

No. 20409. Opinion Filed Sept. 22, 1931.

M: C. Spradling, Eben L. Taylor, and F. A. Bodovitz, for plaintiff in error.

E. M. Connor and E. Jacobs, for defendant in error.

RILEY, J. This is a second appeal from an award of damages by a jury in a proceeding to condemn a triangular parcel of land in the southwest corner of lot 1, block 6, original town site of the city of Tulsa, to be used by the city as a part of an alley extending from the middle of the south line of said block, eastward to the southeast corner of the block, where it connects with Cincinnati avenue, running along the east side thereof.

The award in the first trial was $2,000, from which the city appealed, and judgment was reversed and remanded for a new trial, 131 Okla. 63, 267 P. 852. In the second trial the award was $2,800, and the city again appeals.

For convenience the city of Tulsa will be referred to herein as plaintiff and William Horwitz as defendant.

Assignments of error Nos. 1, 2, and 4 are presented under the proposition that there was no evidence reasonably tending to support the verdict and judgment. The contention is that there is no evidence to support the verdict for the reason that there is no competent evidence tending to show that the property condemned was what was known as trackage property, or property abutting on the right of way of the Missouri, Kansas & Texas Railway Company, between which and the remaining portion of defendant's lot the alley was opened, and the principal claim of the defendant being based upon the alleged fact that by opening the alley defendant's lot was cut off from the railway right of way and rendered less valuable on that account, the claim is not sustained by the evidence.

This contention cannot be upheld. A careful examination of the record will show ample evidence to support defendant's contention in this regard. The uncontradicted evidence shows that defendant's lots prior to the opening of the alley were for all practical purposes abutting the railroad right of way, and that he owned a warehouse on the right of way, paid for by him prior to the commencement of the condemnation proceedings, and that the taking of the strip from the corner of his lot and the opening of the alley thereon separated defendant's said lot from the right of way and his warehouse, and cut off his access to the railroad right of way. There was, however, a narrow strip between the north line of the warehouse and the south line of defendant's lot, and because of this narrow strip the plaintiff contended that none of defendant's property was trackage property as defined by the witnesses for both sides. The mere fact that defendant's lot did not extend entirely to the warehouse or the line of the right of way, as shown by the maps and plats in evidence, does not necessarily mean that his property was not trackage property as so defined. His lot extended to within a few feet of the warehouse built on the right of way. The entire street through this block had been for many years closed to the traveling public and practically all of it used as a railroad right of way, upon which the railroad tracks and warehouses had been placed. It is not entirely clear just where the north line of the right of

way was established, but from the whole record it appears that, if the entire street was not included in the right of way, there was such a narrow strip left as to render impossible the use thereof as a street by the general public so as to constitute an abandonment of that part of the street. Whether the narrow strip between defendant's lot and the warehouse was included in the right of way granted to the railway company or not would not change the result. If not included in the right of way, it was abandoned as a street, because too narrow to be used as such. In such case it would revert to the owner of the adjacent lot. In either case defendant's lot would be trackage property as defined in the evidence by the testimony of witnesses for both plaintiff and defendant.

What we have said disposes of the assignments based upon the refusal of the court to instruct the jury, in effect, that it could not consider the value of defendant's lot as what was denominated by the witnesses "trackage property," unless it found by a preponderance of the evidence that, at the time of the appropriation of the strip of ground, the lots from which it was taken abutted the right of way of the railroad company. Instruction No. 3, requested by plaintiff on this question, was properly refused for the further reason that, if given, it would have told the jury that, after the strip was taken and the alley opened the entire length of the lot and between said lot and the railroad track, the east 41½ feet of defendant's lot, from which no ground was taken, would still remain abutting the right of way and would still be trackage property.

The assignment of error to the effect that the court erred in allowing the admission of evidence of the amount of the special assessments levied against defendant's lot for the paving of the alley between the two lots and the alley running east and west along the south side of lot 1, as an element of damages for which defendant was entitled to recover, is well taken. The court, over the objection of plaintiff, permitted one witness for defendant to testify that the total amount of the special assessments against defendant's lots for paving of the alley was $516.13. Another witness testified that the assessment for the alley along the south side of lot 6 was $298.83. It was contended at the trial, and is contended here, that this was a proper element of damages. This contention cannot be upheld, and it was error to admit the evidence complained of. It has been held that, where land is taken for a street, the damage to the remaining land does not include additional burdens thereon in the form of assessments for sidewalks, curbing, etc.

In Nichols on Eminent Domain (2nd Ed.) vol. 2, sec. 239, p. 737, the rule is:

"When land is taken for a street, the damage to the remaining land does not include possible additional burdens in the form of assessments for sidewalks, curbing and sprinkling. Such assessments depend upon the acts of boards of public officers, which the jury or other tribunal assessing damages has no means of foreseeing. Moreover all such improvements enhance the value of the land, and the owner can ordinarily be assessed only when the benefit equals or exceeds the assessment."

In Appeals of Newton, 84 .Conn. 234, 79 Atl. 742, it was held:

"In assessing damages for land taken to extend a street, the fact that property, which previously abutted on only one street, will be a corner lot and subject to additional burdens for sidewalks, curbing, and sprinkling, cannot be considered as an element of present damage, calling for compensation."

The reason for this rule is that the damage is to be assessed as of the date of the taking, which in this state is held to be the date the amount fixed by the appraisers is paid to the landowners or into court for him. The payment thereof fixes the right of the party condemning the land to take possession thereof. In the instant case the right of the city to take possession of the land was fixed as of May 26, 1923, the date the amount of damages fixed by the appraisers appointed by the court was paid into court for defendant. At that time, and not until then, the city had the right to take possession of the strip condemned for an alley. The question of whether the alley should be improved by paving was a question entirely apart from whether the land should be appropriated and used by the city as an alley. It might be immediately thereafter declared necessary to pave the street, or it might have been a number of years thereafter before it was declared necessary so to do. The authority to levy assessments against the abutting property was based upon the presumption that the value of the remaining portion of the lot, and lot No. 2, from which no land was taken, would be increased by paving the alley an amount equal to the assessments. The right of the city to commence proceedings to pave the alley along the south side of defendant's lot 1, and over the portion of said lot taken, did not accrue until its right to take possession

of the portion condemned was complete. Proceedings for pavement commenced thereafter would necessarily be separate and apart from the condemnation proceedings. Such part of the lot only as was left would be liable for its proportionate share of the expense of paving, and it would be presumed to be benefited and increased in value by reason of the paving to an amount equal to the assessments levied against it.

The cases cited by defendant are from states where the benefits accruing to the remaining portion of the owner's land in condemnation proceedings are deductible from the damage caused by the taking, and the remaining portion was assessable for the cost of condemning and opening the street. These are cases arising under laws entirely different from the laws in this state and involve entirely different facts. The proceedings to condemn having been commenced long prior to the enactment of chapter 350, S. L. 1929, the provisions thereof, if constitutional, would not be applicable. Under the provisions of section 24, art. 2, of the Constitution of Oklahoma, the compensation for taking or damaging private property for public use is to be ascertained and paid in the manner prescribed by law, irrespective of any benefits from any improvements proposed.

Under the law of this state as it existed at the time the property involved was taken, abutting property was not chargeable with any part of the cost of acquiring by condemnation or otherwise of land to be used as a street. The fact that, after a part of a tract of land has been acquired for use as a public street, the remainder of such tract as abutting property may be assessed for the payment of the cost of paving the street, does not make such possible future assessments for such purposes an element of damage in condemnation proceedings for the part so taken.

Plaintiff also assigned as error alleged improper conduct of counsel for defendant in the closing argument to the jury. It is alleged that E. Jacobs in her closing argument to the jury stated that the ordinance showed that the city vacated the street (meaning the street just south of lots 1 and 2, block 6) as a right of way for the Missouri, Kansas & Texas Railway Company, when in fact there was no ordinance introduced and no testimony regarding an ordinance.

The argument of counsel was not taken by the court reporter, nor does a transcript of the proceedings show the alleged statement or any exception thereto or ruling by the court thereon. The question was attempted to be raised by affidavit and oral testimony in support of the motion for a new trial. Counter affidavits were offered at the time the case-made was submitted for settlement, alleging an entirely different statement. The trial court made no finding or certificate that either statement was made. Therefore, the case-made as settled and signed shows no such statement made by counsel. But, conceding the statement made as contended for by counsel for plaintiff, we think they are in error in part when they say there was no evidence regarding an ordinance. Carl Schultz, a witness for plaintiff, in answer to question as to whether or not the Missouri, Kansas & Texas right of way abutted the south line of plaintiff's lot, testified:

"It was supposed to, I think—I am certain that I looked up the ordinance and there was a question in my mind whether that street was ever condemned."

But, as stated before, we think it of little consequence whether the entire street was granted to the railroad as a right of way or only so much thereof as to leave no room on the north side for use as a street. The uncontradicted evidence, including the maps and plats in evidence, shows that substantially all the street was used by the railroad company as a right of way so as to leave no room on the north side to be used for street purposes. It would make no substantial difference whether the narrow strip in controversy was granted to the railroad company by ordinance or abandoned for street purposes. The remarks complained of, if made, were, under the record, not prejudicial, and, therefore, harmless.

The other assignment is that the amount of recovery is grossly excessive. There is ample evidence to support the award, but in view of what we have said, a portion thereof may be based upon incompetent evidence, and to that extent may be excessive. It does not necessarily follow, however, that the judgment must be reversed on this account. The amount involved in the incompetent testimony, as shown by the evidence, could not exceed the sum of $516.13. Conceding that the jury gave the defendant the benefit of the entire amount claimed by him on account of the assessments for paving the alley, this amount being easily determinable, if remitted, will cure the admission of the incompetent evidence relative thereto. But unless said sum be remitted, it will be necessary to reverse the judgment on account of the admission of this evidence.

The judgment will, therefore, be reversed

and the cause remanded for a new trial unless defendant within 20 days file a remittitur in the sum of $516.13. In case such remittitur is filed within said time, the judgment will be affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and ANDREWS and KORNEGAY, JJ., absent.

Note.—See under (3) 2 R. C. L. 139.