Note.—See under (1) 4 C. J. p 709, §2620; 14 R. C. L. p. 770; 4 R. C. L. Supp. p. 918; 5 R. C. L. Supp. p. 776. (2) 33 C. J. p. 1180, §112; 38 Cyc. p. 1929; 15 R. C. L. p. 606; 5 R. C. L. Supp. p. 844. 6 R. C. L. Supp. p. 1514. (3) 42 C. J. p. 340, §2063; p. 341, §2064 (Anno) ; 19 R. C. L. p. 567; 3 R. C. L. Supp. p. 957. (4) 37 Cyc. p. 473; 25 R. C. L. p. 1338; 6 R. C. L. Supp. p. 1514. (5) 4 C. J. p. 1166, §3187.

---

## CITY OF TULSA v. HINDMAN.

No. 17698. Opinion Filed Nov. 22, 1927.

Rehearing Denied Dec. 20, 1927.

(Syllabus.)

**Eminent Domain—Liability of City to Abutting Landowner for Damages from Widening Street so as to Do Away With Sidewalk.**

Where a city widens or opens a street for automobile and motor truck traffic to its entire width, thereby consuming all space theretofore assigned and set apart for sidewalks or footroads, it is liable to abutting property owners for any consequential damages resulting to such property. The damage is the depreciation in the market value of the property.

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Adesta F. Hindman against the City of Tulsa for damages to property by reason of widening a street and abolishing sidewalk space. Judgment for plaintiff, and defendant appeals. Affirmed.

H. O. Bland and Harry L. S. Halley, for plaintiff in error.

Poe & Lundy and R. E. Morgan, for defendant in error.

HALL, C. This was an action by Adesta F. Hindman against the city of Tulsa, for consequential damages resulting from the action of the city of Tulsa in paving one of its thoroughfares, Eleventh street, the entire width of the street, wiping out what had been formerly set aside and assigned for purposes of sidewalk and parking, and extending the paving up to approximately 1.4 feet from one apartment house and up to 9.4 feet of another, both owned and operated by the plaintiff. These houses abutted Eleventh street only latterly, fronting in opposite directions on streets practically at right angles with Eleventh street. Plaintiff also owned a garage used by the tenants in both apartment houses; the means of approach to it was on Eleventh street, and the paving extended to within 1.05 feet of the front of this garage.

Plaintiff asked for $10,000 damages for actual depreciation of the market value of her property. A jury was waived and the case tried to the court, who awarded plaintiff the sum of $2,500 in damages against the city.

The evidence clearly shows that there was no discriminative action against the plaintiff or any other person or group of persons residing in the neighborhood of plaintiff or along Eleventh street. It might properly be said that there was no discrimination other than the mere fact of the abolition of all parking and all the sidewalk space along this street, and appropriating same to the use of motor vehicles. The evidence shows that Eleventh street was one of the main arteries of traffic for motor vehicles passing in and out of this city; and that the city commissioners thought it proper, and that it would best subserve the public interest by widening this street, for this character of traffic, to its entire width, 56 feet.

In deciding cases of this nature, courts are confronted with two main difficulties: First. No general statement of the law has ever been laid down, and perhaps no rule can be formulated, which will apply to any considerable number of cases where a municipality is sought to be charged with legal liability for consequential injuries to adjoining or neighboring property. Second. While the numerous cases on the subject may not be in terms conflicting, but the borderland in nearly all of them is so near, and the dividing line between the zone, where nonliability ceases and legal liability takes hold, is so obscure that the courts themselves, while not expressing a doubt as to the security of their respective positions, nevertheless, in many cases, have used language in their discussions which in a manner has weakened their positions. The very nature of the subject-matter is responsible for that result. Therefore, just what injuries to property, or those things causing its depreciation, which are not actionable because shared by the community as a whole, because they are injuries "in kind" instead of "in degree", we will not discuss except briefly to illustrate the general principles of legal liability. This case presents no complex problem.

The question presented here is whether or not a city is liable to an abutting property owner for the destruction or usurpation of a passageway or footway, ordinarily known as a sidewalk, either in front of or beside complainant's house, when this passageway is obstructed only to the extent of converting it into an open street for automobile and motor truck traffic. And before answering the question, to restrict it to the particular subject-matter, can such be done without adequate compensation for all resulting injuries to the property, when this street, for automobile and motor truck traffic, is extended up to 18 inches of one of plaintiff's buildings intended for habitation or business? We think not. The very question itself suggests the answer.

Under our law (section 24, art. 2 of our Constitution), damages to property much nearer the border line than the present case have never been denied. It has been held in this state, and seems now to be the settled law everywhere under statutes or constitutional provisions similar to ours, that a property owner can recover damages for the mere changing of the grade, either leaving his property below the street or above the street. Edwards v. Thrash, 26 Okla. 472, 109 Pac. 832; City of Mangum v. Todd, 42 Okla. 343, 141 Pac. 266, L. R. A. 1915A. 382; 10 R. C. L. 171.

Many of the cases, in denying relief against a municipality in certain cases where the legal discretion apparently might be exercised in either direction, have denied relief on the principle of "damnum absque injuria," and have cited as illustrations of this the erection of a jail, pesthouse, hospital, cemetery, and the like, at or near the property affected, although such establishments necessarily result in a depreciation of neighboring property. Even in cases of this nature our court has exploded that rule in the case of Oklahoma City v. Vetter, 72 Okla. 196, 179 Pac. 473, 4 A. L. R. 1009. In that case the court held that one's property could not be destroyed or impaired by the munici-

pal authorities in establishing or authorizing a pesthouse or hospital adjacent to one's property without answering in damages to the owners thereof. Many other states, having constitutional provisions similar to ours, or either treating the matter as fundamental, are committed to the same doctrine. Jacobs v. City of Seattle, 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B, 329. In that case a garbage incinerator was established near plaintiff's property.

The rule applicable here is well stated by the Supreme Court of Georgia in Pause v. City of Atlanta, 98 Ga 92, 26 S. E. 489, 58 A. S. R. 290, Georgia having a constitutional provision similar to ours. In that case the court allowed damages to an abutting property owner for the construction, by the municipal authorities, of a public bridge for public traffic in a street which resulted in permanent injury to the property of an abutting lot owner. In that case her right in the property was only a lease; her power of ingress and egress was not destroyed, but was made more inconvenient and hazardous. The court granted her relief. The rule formulated in that opinion is contained in the following quotation from the opinion:

"The rule seems to be deducible from the decisions of the courts of other states, construing constitutional provisions similar to our own, that if the owner of property, because of the permanent physical improvement itself, suffers damages by reason of the permanent diminution in the value of his property or estate, as distinguished from mere personal inconvenience, he has a right to action for such damages; nor is it material whether the property damaged abuts directly upon the improvement, or is distant therefrom."

The North Carolina Supreme Court, in the case of White v. N. W. N. C. Ry. Co., 113 N. C. 610, 18 S. E. 330, 37 A. S. R. 639, 22 L. R. A. 627, held that an abutting property owner has such interest in the street as will entitle him to an action in damages for authorizing the operation of a steam railroad in the street, resulting in a narrowing of the street for the traffic for which it was designed, and thereby pushing a larger volume of the traffic over in proximity to plaintiff's property. The opinion in that case is exhaustive and shows that the matter received the most careful consideration. The court in that case, in part, quoting with approval the case of Adams v. Chicago, etc., R. Co., 39 Minn. 286, said:

" 'Take a case in one of the states where the fee of the street is in the state or municipality, and of a street 60 feet wide. The abutting lot owners have paid for the advantages of the street on the basis of that width, either in the enhanced price paid for their lots, or, if the street was established by condemnation, in the taxes they have paid for the land taken. In such a case, if the state or municipality should attempt to cut the street down to the width of 10 or 15 feet, would it be an answer to objection by lot owners that the diminished width would be sufficient for mere purposes of access to their lots? It would seem as though the question suggests the answer.' The interest of the abutting owner in the entire width of the street, subject to the proper uses of the public, upon the authority of the above decision, has been declared by this court in Morse v. Carson, 104 N. C. 431, and cannot be regarded as an open question. See, also, Hanes v. Thomas, supra. If then the value of the property is lessened by reducing the width of the street, or if such damage is caused by excavations rendering it unsafe and dangerous, as stated in the complaint, the plaintiff is entitled to recover."

Counsel for defendant rely on the holding of two cases from the state of North Carolina, and two from the state of Texas, as a grant of authority to a city commission to convert its sidewalk space into streets to be used by vehicles of all classes. These cases tend to support such contention; but assuming that at the time these cases were decided, they reflected the rule in those states relating to the dominion of a municipality over the streets, the decisions are of no value as precedents now. At least, we decline to follow them.

The obsolete character of these decisions cited by defendant, involving the destruction of sidewalks, is fully revealed by an examination of them. For instance, the case of Watland v. Whitham & Co. (Tex. Civ. App.) 261 S. W. 387, was wholly based on Jones v. Houston (Tex. Civ. App.) 188 S. W. 688, which latter case in turn was based on Hester v. Durham Traction Co., 138 N. C. 288. Likewise, Crotts v. Winston-Salem, 170 N. C. 24, was based on Hester v. Durham Traction Co., which parent case arose in 1904 and was based and predicated upon a European and Asiatic custom, as will be observed from the following language originally used and applied in that case and adopted and quoted with approval in the other and later cases above mentioned. The language is:

"Sidewalks are of modern origin. Anciently they were unknown, as they still are in eastern countries, and in perhaps a majority of the towns and villages of Europe. In the absence of a statute, a town is not required to construct a sidewalk. * * * It is for the town to prescribe the width of the sidewalk. In the absence of statutory restriction, it may widen, narrow or even remove a sidewalk already established."

By no means relying on the following case for our conclusions, we here submit some observations containing the gist of the decision of the Kentucky Supreme Court in the case of City of Georgetown v. Hambrick, 127 Ky. 43. 104 S. W. 997, which case was decided in the year of 1888:

"In ordinary city streets there is a carriage way in the center and sidewalks on the side. The sidewalk in as necessary as the carriage way, and both are equally within the contemplation of the parties in the dedication. The city council under its power to regulate and control the streets, may fix the width of the carriage way or the sidewalks, or determine how much space shall be given to each; but it cannot say that the whole street shall be used as a carriage way, and that no part of it shall be used as a sidewalk. The owner of the abutting property is entitled to have a reasonable space for sidewalk, and the council cannot act arbitrarily. It can determine what is a reasonable space, but in so doing it must exercise a fair judgment."

As emphasizing the necessity of sidewalks under the new order of things, relating to the use of streets, the principal cities make it a violation of local law for a pedestrian to enter the streets at certain intersections without first obtaining the signal of safety, or the signal of least danger.

According to the actions and proceedings of the various chambers of commerce, civic clubs, safety councils, and efforts of the newspapers and metropolitan journals, the thoughts and efforts of serious men are directed at means of providing additional facilities for pedestrian traffic instead of abolishing what the people already have. Sidewalks are not only being retained, but footroads, over and under many streets, are being proposed and established. Several cities have already built many of these footways, primarily for the use of children going to and from school. If we are correctly informed, at least one city in Oklahoma is launching the same enterprise.

We do not intend to say or indicate that the city of Tulsa cannot, under certain conditions, extend its streets to any width it deems necessary. That particular question is not before us. But the city, in extending a street to the extent of wiping out its sidewalk space, must compensate the abutting property owner for the resulting damages. And it is not a requirement that the property shall front on the particular street so impaired. Pause v. City of Atlanta, supra; Foster Lumber Co. v. Arkansas Valley, etc., Ry. Co., 20 Okla. 594. 95 Pac. 224; Dantzar

v. Indianapolis Union Ry. Co, 141 Ind. 604, 39 N. E. 223.

It is urged by the defendant. and the record sustains the contention, that the city commission was acting in good faith, and thought it proper and expedient to convert Eleventh street into a street for automobile and motor truck traffic, almost exclusively unless the pedestrian sought to take his chances. As we view the situation, good faith of the city commission has nothing to do with this particular controversy, while good faith and freedom from discrimination, in this case, relieved the particular officers from any assumption of the commission of a personal tort, nevertheless such action deprived plaintiff of a safe and unrestricted footroad by the side of her house, and subjected this sidewalk space to an unreasonable use.

The judgment of the lower court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 20 C. J. p. 703, §156 (Anno); p. 744, §196 (Anno); p. 750, §206; 28 Cyc. p. 1075; 13 R. C. L. p. 62; 4 R. C. L. Supp. p. 797.