## CHICAGO, R. I. & P. R. CO. et al. v. LARWOOD.

No. 23646.    June 18, 1935.

Rehearing Denied Nov. 26, 1935.

W. R. Bleakmore, W. L. Farmer, John Barry, Robert E. Lee, Cruce & Franklin, W. T. Stratton, W. H. Brown, and Harlan Deupree, for plaintiffs in errors.

Suits & Disney, for defendant in error.

PER CURIAM. For about eight years prior to August, 1930, the plaintiff, U. E. Larwood, operated a community drug store and fountain with curb service, in a building at the southeast corner of the intersection of Walker avenue and Choctaw street in Oklahoma City. He had rented said building during that time, paying $35 per month rent. About August 15, 1930, he renewed the lease on the building for another year at the same rental, and continued to operate the business.

The defendants Chicago, Rock Island & Pacific Railway Company and Choctaw, Oklahoma & Gulf Railroad Company own and operate a line of railroad that crosses Walker avenue about a half block south of Choctaw street, and the defendant St. Louis-San Francisco Railway Company owns and

operates a line of railway that runs parallel with the other railroad and in close proximity to it.

In July, 1930, the Corporation Commission made an order that said defendants construct an underpass under both roads, and work was commenced thereon in September, 1930, and it was completed in June, 1931.

During the progress of the work the streets and sidewalks around plaintiff's place of business were torn up, a deep ditch was left open near the front of the store, large piles of dirt were left in the street, the curb service was destroyed, the front entrance to the store was practically closed so that patrons had to use the rear entrance, and the plaintiff's business was seriously interfered with by the progress of the work.

The plaintiff filed this action to recover damages to his lease, and also for loss of profits to his business, but at the trial it was agreed that he could not recover for loss of profits, and the court limited him to recovery of damages to his lease. The jury returned a verdict in his favor for $1,250, and from an order overruling a motion for new trial the defendants appeal.

1. The defendants contend that the court committed error in admitting evidence as to the gross amount of business done, and the net profits realized, during the year before the construction was commenced, and during the year the construction was in progress.

This action was one to recover consequential damages under section 24, article 2, of the state Constitution, which provides:

"Private property shall not be taken or damaged for public use without just compensation."

Under this constitutional provision a recovery is authorized, although there is no physical invasion of the property damaged. Muskogee v. Hancock, 58 Okla. 1, 158 P. 622; Oklahoma City v. Vetter, 72 Okla. 196, 179 P. 473; Page v. Oklahoma City, 129 Okla. 28, 263 P. 448; City of Tulsa v. Horwitz, 131 Okla. 63, 267 P. 852; State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002. The true measure of damages under this constitutional provision is the depreciation in the market value of the property so taken or damaged, resulting from the public improvement. City of Tulsa v. Hindman, 128 Okla. 169, 261 P. 910; Tulsa v. Lloyd, 129 Okla. 27, 263 P. 152.

The same rule applies to the interest of a lessee. 20 C. J. page 741, 10 R. C. L. page 136. Under this constitutional provision there can be no recovery for loss of profits or of good will to a business, as they do not constitute "property" as that term is used. City of Oakland v. Pacific Coast Lumber & Mill Co. (Cal.) 153 P. 705; Banner Milling Co. v. State (N. Y.) 148 N. E. 668; Morris v. City and County of San Francisco (Cal. App.) 210 P. 824.

While there is a conflict in the authorities as to whether under such a constitutional provision evidence is admissible as to the gross sales and the net profits of a business before and after such construction, to aid the jury in determining the depreciation in the market value of the property taken or damaged, we think the better rule is that such evidence is admissible. Montgomery Co. v. Schuylkill Bridge Co. (Pa.) 20 Atl. 407; Ranck v. Cedar Rapids (Iowa) 111 N. W. 1027; Weyer v. Chicago, W. & N. R. Co. (Wis.) 81 N. W. 710; Brainerd v. State, 131 N. Y. Supp. 221; Lewis on Eminent Domain (3d Ed.) sec. 727; Reisert v. City of New York (N. Y.) 66 N. E. 731; Sutherland on Damages, vol. 3, sec. 867 (4th Ed.). However, the court should make it plain to the jury that they are to consider it only to aid them in determining the depreciation in the market value. This the trial court did at the time the evidence was introduced, as well as in the last part of instruction No. 7, where the court said:

"In determining the market value of the lease, you will take into consideration the location of the premises, the kind and character of business carried on by the plaintiff, and the scope and value of plaintiff's business."

The jury is entitled to all the facts that have a legitimate bearing on the question as to the depreciation in the market value of the property taken or damaged, to aid them in determining the depreciation in the market value. The value of business property is largely determined by the profits that can be made by the use of it. A prospective purchaser as well as an expert witness who is called upon to give an estimate as to the value would certainly want to know whether the business carried on is or is not profitable, and whether the location is desirable from the standpoint of income.

2. The defendants next contend that the court should have sustained a demurrer to the evidence on behalf of the plaintiff, and

should also have directed a verdict for the defendants.

There was testimony that the market value of plaintiff's lease was $200 per month prior to the construction of the underpass, and that after the construction was commenced it had no market value. The testimony was that for the year prior to construction the gross sales of the store amounted to $11,614.54, and that during the year of construction they amounted to but $5,455.51, and that the net profits during the year prior to construction amounted to $2,385.81, and during the year of construction they amounted to but $182.20.

Defendants argue that the plaintiff renewed the lease after he knew that the underpass was to be built, and for that reason he cannot recover. We think there is no merit in this contention. 20 C. J. 852; Justice v. City of Philadelphia (Pa.) 32 Atl. 592.

The court properly overruled the demurrer to plaintiff's evidence, and the defendants' motion for a directed verdict.

3. The defendants next contend that the court did not correctly state the law as to the measure of damages.

In instruction No. 6 the court told the jury that if they found for the plaintiff their verdict should be "for such sum as would reasonably compensate him for the damages sustained as shown by the evidence," and in instruction No. 7 the court told the jury that "in estimating his damage you will determine the reasonable market value of the lease immediately prior to the time construction was commenced, and the reasonable market value of the lease during the year that the same was rented by the plaintiff and the construction was being carried on."

We do not believe the jury could have been misled by these instructions. The case was tried on the theory that there was a depreciation in the market value of the lease by reason of the construction of the underpass. If there was no depreciation there was no damage. There could be but one reason why the jury was to consider the market value the year before construction was commenced and the year construction was in progress, and that was to ascertain if there was a depreciation.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Thurman S. Hurst, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by this court.

McNEILL. C. J., and RILEY, BAYLESS, BUSBY. PHELPS, and CORN, JJ., concur. OSBORN, V. C. J., and GIBSON, J., dissent. WELCH, J., absent.