## HAWKS et al. v. WALSH et al.

No. 23235.   Oct. 6, 1936.

J. Berry King, Atty. Gen., Geo. J. Fagin, Asst. Atty. Gen., Mac Q. Williamson, Atty. Gen., Houston E. Hill, Asst. Atty. Gen., and L. V. Orton, Right-of-Way Atty., for plaintiffs in error.

Blanton, Curtis & Blanton and King & Crawford, for defendants in error.

WELCH, J. In the trial court the plaintiffs, J. M. Walsh and Minnie Walsh, instituted this action, numbered 10943, against the State Highway Commissioners for damages to real property resulting from the method of construction of highway improvements, and alleged to cause the plaintiffs' property to be inaccessible and difficult of approach, and to be depreciated in value, to plaintiffs' damage in the sum of $10,000, in addition to the value of the property theretofore condemned by the state in condemnation proceedings.

In a former action, numbered 9927, wherein the state was plaintiff, and J. M. Walsh and Minnie Walsh were defendants, the state, in the exercise of the power of eminent domain, had maintained condemnation proceedings and taken a small tract of five one-hundredths of an acre of land owned by Walsh for highway purposes, paying in therefor the sum of $50, which was the sum therein awarded. A few months later the highway was constructed, and nearly two years later Walsh and wife commenced this action, numbered 10943, for alleged resulting or consequential damages, alleged to have been caused by the manner of the construction of the highway project.

There was no attempt to proceed by praecipe and summons as in the ordinary action for damages, but, instead, the plaintiffs attempted to proceed through the appointment of commissioners to estimate or appraise plaintiffs' damage as in the case of strict condemnation cases.

The trial court appointed three commissioners, who thereafter made their written report that they had duly considered the matter and assessed the damages due Walsh and wife by reason of the construction of the road and highway in the sum of $2,500.

The defendant Highway Commission then filed their motion to vacate the report of the commissioners and to dismiss plaintiffs' petition. To that motion the plaintiffs, Walsh and wife, filed a response, and thereafter the matter came on for hearing and trial before the court without the intervention of a jury, the plaintiffs being represented by their attorneys, and the defendants by the Attorney General of the state.

Both parties then presented documentary evidence of former proceedings in connection with the asserted damages, which we do not deem it necessary to note in detail, and there was oral testimony of witnesses as to the physical facts in reference to the property.

When both sides had rested, the trial court made its orders and rendered judgment as follows: After reciting that the matter had come on for hearing on the defendants' motion to dismiss the action, and on the plaintiffs' application to confirm the report of the commissioners, the court determined and ordered and adjudged that defendants' motion to dismiss be overruled and denied, and thereupon the court, reciting that the evidence had been heard, found that the application of the plaintiffs' for confirmation of the report of the commissioners should be sustained. Thereupon, the trial court rendered judgment in favor of plaintiffs and against the defendants as Highway Commissioners of the State of Oklahoma, in the sum of $2,500 and costs.

Proper exceptions were saved, and the defendants prosecute this appeal to reverse that judgment.

At the outset we are confronted with a question which we view as controlling. That is, the contention that this is such a suit against the state as cannot be maintained without the consent of the state.

In National Surety Co. v. State Banking Board, 49 Okla. 184, 152 P. 389, this court, speaking through Chief Justice Kane, stated the rule in these words:

"It is a long-established and well-recognized principle of sovereignty that the state cannot be sued without its consent granted by direct legislative enactment."

That rule has been followed with complete consistency.

In State v. Fletcher, 168 Okla. 538, 34 P. (2d) 595, we considered an action for private consequential damages following con-

struction of public improvement, and the maintenance thereof; but that action was preceded by specific consent granted by direct legislative enactment.

It is not contended that any such character of consent has been granted here. The plaintiffs contend that this is not such an action against the state as to require such consent. And that sections 10093, 10094, 11931, and 11935, O. S. 1931, contain sufficient consent to the maintaining of this action. That contention is apparently based upon the method of procedure adopted by the plaintiffs in this action. There was no praecipe filed and summons issued as in the ordinary action for damages, but instead the plaintiffs elected to proceed by and through the appointment of commissioners to estimate the amount of damages as in the case of strict condemnation cases. That was, of course, the procedure followed by the state in the former case, No. 9927, in maintaining proper condemnation proceedings before the highway construction. Section 24, article 2, of the Constitution, and the sections of the statute above mentioned, outline that method of procedure in such a case. But there is nothing contained therein which could be construed as consenting or authorizing the maintenance of a damage suit against the state by the use of that procedure to recover consequential or resulting damages following prior road construction over right of way properly acquired. If such procedure may be relied upon to maintain such an action for such damages, then it might well be argued that the claim involved in State v. Fletcher, supra, could have been sued on in a similar manner without waiting for the legislative consent to sue the state.

It is wholly clear in the case at bar from the plaintiffs' petition, and from the judgment rendered, as well as from the evidence incorporated in the case-made, that this is nothing more nor less than an action for consequential damages alleged to have resulted from prior road construction work of the state, and is an effort to recover those damages from the public funds of the state after the amount of the unliquidated claim is determined by trial upon the damage claim. We find no difficulty in concluding that it is a suit against the state, and that the status of the suit as an action against the state is not changed by the plaintiffs' effort to proceed through the appointment of commissioners as in condemnation proceedings. If the state had originally proceeded with its highway construction without obtaining the right of way or without maintaining condemnation proceedings, then the landowner might have

instituted the action which the state had failed to institute, such original condemnation being expressly authorized by the statutes cited, but no such situation is presented. We see here nothing more than an attempt to maintain an unauthorized damage suit against the state by an attempted resort to the initial procedure of condemnation.

Our attention is directed to City of Tulsa v. Hindman, 128 Okla. 169, 261 P. 910, and C., R. I. & P. R. Co. v. Larwood, 175 Okla. 96, 51 P. (2d) 508, and other cases where we upheld the right to recover consequential damages. But in each of those cases we found a defendant capable of being sued for such damages. Those cases did not involve any immunity from suit, which is one of the attributes of the sovereign state and is the controlling question here.

Our attention is directed to State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002, with the contention that the ruling there should be held to justify this suit. Some criticism of that opinion is presented. We neither approve nor disapprove that opinion here. It is not directly in point. That opinion points out and emphasizes the fact that the case does not involve or present the question of the maintenance of a suit against the state. That question is presented here, and is the controlling question, and therefore the opinion in the Smith Case is not directly in point. In that opinion there are expressions which might be construed as approving the appointment of commissioners to estimate consequential damages. Those expressions would be wholly incorrect as applied to a suit seeking and obtaining judgment against the state, as this one, where that question is properly presented as it is here. We, therefore, in this case cannot follow plaintiffs' construction of the rule in the Smith Case.

Our attention is directed to Wentz v. Potter, 167 Okla. 154, 28 P. (2d) 562; Morse v. Board of County Commissioners, 169 Okla. 600, 38 P. (2d) 945, and Sweeney v. Dierstein, 170 Okla. 566, 41 P. (2d) 673, and plaintiffs contend they support their right to so sue the state. However, those cases involve or refer to an original taking by the state, in each case without consent of the landowner plaintiff, and without a condemnation by the state against the owner plaintiff. In such case the statutes authorize the landowner to commence the condemnation proceedings which the state should have commenced against him, but did not do so. The right of the plaintiff in each of those cases to so proceed depends on the fact that **no**

such prior proceeding against him had been conducted by the state. Neither of those cases involved a subsequent action for consequential damages alleged to result from prior road construction on right of way properly purchased or condemned by the state in a former action against the same party. Those cases, therefore, do not support plaintiffs in bringing this second so-called condemnation proceeding to recover judgment for consequential damages.

In Stedman v. State Highway Commission, 174 Okla. 308, 50 P. (2d) 657, this court did adopt an opinion squarely in conflict with our present views. By reason of that fact we have given special consideration to a thorough test of our conclusion that such a suit cannot be maintained against the state. We are now thoroughly satisfied that this is a suit against the state; that the state cannot be sued for such consequential damages without its consent; that the state had not consented to such action, and therefore the same cannot be maintained. That being undoubtedly the correct rule, it is our clear duty to overrule the decision in Stedman v. State Highway Commission, supra, and that opinion is therefore expressly overruled.

It is urged that such conclusion leaves the plaintiffs without present adequate remedy to enforce their right to compensation in the courts. That is true, but not because the courts are unwilling to act and to afford a remedy. It is true because the courts are powerless to afford a remedy by suit against the state. The rule that the sovereign state is immune from suit without its consent is a fundamental rule. That rule is of equal force with the law which creates the courts and defines their duty and authority. It would be usurpation of power for the courts to undertake to decree a right to sue and recover judgment against the state for damages resulting from any orderly state activity or properly prosecuted state function, unless the state had consented to be so sued.

The Supreme Court of New Mexico in Dougherty v. Vidal, 21 P. (2d) 90, considered a similar or closely related question with an identical constitutional provision, and comparable statutes, and where the same arguments were made for the right to a judicial remedy. There it was said in the body of the opinion:

"The basic argument of such cases, and that stressed by appellant, is that unless the state can thus be reached, a citizen will be without redress for the invasion of his constitutional right. This flatly challenges state immunity from suit. The doctrine necessarily presupposes that very result, so far as judicial remedies are concerned.

"The argument also ignores the political remedy, which, after all, is the sole recourse of the citizen in many cases. If the state's immunity from suit were looked upon as license to the state to violate the Constitution and do injury to its citizens, it would be immoral and insufferable. It is justified by the fact that the Constitution is binding on the conscience of all branches of the government and that the Legislature as well as the courts may be looked to for justice.

"Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. 'A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.' Mr. Justice Holmes, in Kawananakoa v. Polyblank, 205 U. S. 349, 27 S. Ct. 526, 527, 51 L. Ed. 834. The Legislature, not to mention the courts, should proceed slowly and with caution in subjecting the state itself to the exigencies of litigation. Langford v. U. S., 101 U. S. (11 Otto.) 341, 25 L Ed. 1010.

"Moreover, a question of jurisdiction arises. This court is the creature of the sovereign state. It can have no natural or presumptive jurisdiction over its creator. Such jurisdiction as we have over the state we must trace to the Constitution or to that branch of government which declares the state's public policy. In the absence of plain consent, to entertain a suit against the state is judicial usurpation.

"Futhermore. 'It is usually said that statutes authorizing suits against the state are to be strictly construed, since they are in derogation of the state's sovereignty.' 59 C. J. 302; 25 R. C. L. 416; Lewis' Sutherland, St. Const. (2d Ed.) sec. 558.

"It will not do to say that because the state claims the right to proceed in condemnation, it impliedly consents to be sued in case its rightful use of the property taken results in consequential damage to property not taken. The right of the state to sue in its own courts has always stood side by side with its right not to be sued. Legislative authorization to a state arm or agency to enter into a contract with a citizen in the state's name has seemed to some judges sufficient to imply a consent to a suit against the state or its agency for a breach of it. We do not so understand. The state, as a contracting party, pledges its faith and credit; no more,

"The practical necessity back of these legal distinctions is too plain to require exposition. The state must be permitted generally to pursue its governing and business functions

free from interference by its courts. Its Legislature may, indeed, make such provision for suits as its wisdom suggests. It will surround the jurisdiction with such restrictions as public policy may seem to require. A familiar instance is the limited jurisdiction of courts of claim."

Further in the body of the opinion:

"We have said so much because of appellant's insistence upon his remediless situation as against an invasion of his constitutional right—a matter to which no court should turn a deaf ear. We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts. By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. It is better that all understand that the legislative responsibility is undivided."

It will be readily seen that the applicable statutes of New Mexico are not identical with our own, being in some instances perhaps more nearly susceptible to plaintiffs' construction than our own. It is much clearer that our statutes have no tendency to indicate legislative intent to consent to such suits. This makes the language above quoted of special force in our case. The general rule was stated in Dougherty v. Vidal, supra, in these words:

" 'It is a fundamental doctrine at common law and everywhere in America that no sovereign state can be sued in its own courts or in any other without its consent and permission.' " (Supported by authorities there cited.)

In the other states it is universally held that statutes permitting a state to be sued are in derogation of its sovereignty and will be strictly construed. Instances are found in Miller v. Pillsbury (Cal.) 128 P. 327, and cases therein cited.

The right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction, and statutes must clearly permit the state to be sued or the right to do so will not exist, as the rule was stated by the California Supreme Court in Westinghouse Elec. & Mfg. Co. v. Chambers, 145 P. 1025.

See, also, Penn Mutual Life Ins. Co. v. Heiss,

141 Ill. 35, and Parker v. The Catholic Bishop of Chicago, 146 Ill. 158, for discussion by the Supreme Court of that state as to a constitutional provision identical or quite similar to our own, and the distinction between direct injury and damage in the original taking which is paid for in the original condemnation, and consequential damages resulting from the construction work.

In Wilkinson v. State, 134 P. 626, the Supreme Court of Utah considered an action for consequential damages resulting from overflow water cast upon plaintiffs' land by embankments and canals theretofore constructed. It was held the action could not be maintained, due to the state's immunity from suit. The court observed the distinction between such consequential damages on the one hand, and upon the other hand, the liability of the state for property directly injured or damaged in the original taking, which damages are not merely consequential. Such direct damages are, of course, paid for in the original condemnation action in our state. In the Wilkinson Case the Utah court made it plain that it was not interfering with the right and duty of the state, upon the original taking, to settle all such direct damages. We think our statutes are plain as to the same right and duty in our state to pay such direct damages upon the taking of a road right of way, and so far as we know, it has never been contended to the contrary.

Since the action of plaintiffs cannot be maintained, the judgment rendered below is reversed, and the cause remanded, with directions to dismiss.

McNEILL, C. J., and PHELPS and CORN, JJ., and ROY GLASCO, Special Justice, concur. RILEY, BAYLESS, and GIBSON, JJ., dissent. H. M. SHIRLEY, Special Justice, absent. OSBORN, V. C. J., and BUSBY, J., disqualified and not participating.