### STATE HIGHWAY COMMISSION v. BRIXEY et al.

No. 25986. Oct. 6, 1936.

Rehearing Denied Nov. 10, 1936.

J. Berry King, former Atty. Gen., Robert D. Crowe, former Asst. Atty. Gen., R. A. Keller, Mac Q. Williamson, Atty. Gen., Houston R. Hill, Asst. Atty. Gen., and L. V. Orton, Right-of-Way Atty., for plaintiff in error.

Embry & Embry, for defendants in error.

WELCH, J. In the trial court Samuel Brixey and Della Brixey instituted this action, number 11305, against the State Highway Commission for the recovery of damages to real property resulting from the method of construction of highway improvements, and alleged to cause the destruction of plaintiffs' filling station and grocery business, and to cause certain of plaintiffs' lands to be subject to overflow from backwater, which was forced across the lands of others and onto plaintiffs' land.

In a former action, numbered 10937, the state, in exercise of the power of eminent domain, had maintained condemnation proceedings and taken 1.44 acres of land owned by the Brixeys for highway purposes, paying the sum of $250, which was the sum therein awarded, as damages to the entire tract of land. The highway was constructed. There was then a reconstruction project with federal aid, followed several months later by this action for alleged resulting damages to plaintiffs as above set out.

Following trial to a jury there was a verdict for plaintiffs, fixing their recovery at $500, and a judgment rendered for said sum "against the defendant, State Highway Commission of Oklahoma, Sam R. Hawks, Chair-

man, J. F. McKeel, and L. H. Wentz, as members of the State Highway Commission of the State of Oklahoma, and their successors in office." From that judgment this appeal is prosecuted.

At the outset there is presented a question which we view as controlling. That is, the contention that this is such a suit against the state as cannot be maintained without consent of the state.

In National Surety Co. v. State Banking Board, 49 Okla. 184, 152 P. 389. this court, speaking through Chief Justice Kane, stated the rule in these words:

"It is a long-established and well-recognized principle of sovereignty that the state cannot be sued without its consent granted by direct legislative enactment."

That rule has been followed with complete consistency.

In State v. Fletcher, 168 Okla. 538, 34 P. (2d) 595, we considered an action for private consequential damages following construction of public improvement, and the maintenance thereof; but that action was preceded by specific consent granted by direct legislative enactment.

It is not contended that any such character of consent has been granted here. The plaintiffs contend that this is not such an action against the state as to require such consent. And that sections 10093, 10094, 11931, and 11935, O. S. 1931, contain sufficient consent to the maintaining of this action. That contention is apparently based upon the method of procedure adopted by the plaintiffs in this action. There was no praecipe filed and summons issued as in the ordinary action for damages, but instead the plaintiffs elected to proceed by and through the appointment of commissioners to estimate the amount of damages as in the case of strict condemnation cases. That was, of course, the procedure followed by the state in the former case, No. 10937, in maintaining proper condemnation proceedings before the highway construction. Section 24, article 2, of the Constitution, and the sections of the statute above mentioned outline that method of procedure in such a case. But there is nothing contained therein which could be construed as consenting or authorizing the maintainance of a damage suit against the state by the use of that procedure to recover consequential or resulting damages following prior road construction over right of way properly acquired. If such procedure may be relied upon to maintain such an action for such damages, then it might well

be argued that the claim involved in State v. Fletcher, supra, could have been sued on in a similar manner without waiting for the legislative consent to sue the state.

It is wholly clear in the case at bar from the plaintiffs' petition, and from the judgment rendered, as well as from the evidence incorporated in the case-made, that this is nothing more nor less than an action for consequential damages alleged to have resulted from prior road construction work of the state, and is an effort to recover those damages from the public funds of the state, after the amount of the unliquidated claim is determined by trial upon the damage claim. We find no difficulty in concluding that it is a suit against the state, and that the status of the suit as an action against the state is not changed by the plaintiffs' effort to proceed through the appointment of commissioners as in condemnation proceedings. If the state had originally proceeded with its highway construction without obtaining the right of way or without maintaining condemnation proceedings, then the landowner might have instituted the action which the state had failed to institute, such original condemnation being expressly authorized by the statutes cited, but no such situation is presented. We see here nothing more than an attempt to maintain an unauthorized damage suit against the state by an attempted resort to the initial procedure of condemnation.

Our attention is directed to City of Tulsa v. Hindman, 128 Okla. 169, 261 P. 910, and C., R. I. & P. R. Co. v. Larwood, 175 Okla. 96, 51 P. (2d) 508, and other cases where we upheld the right to recover consequential damages. But in each of those cases we found a defendant capable of being sued for such damages. Those cases did not involve any immunity from suit, which is one of the attributes of the sovereign state and is the controlling question here.

Our attention is directed to State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002, with the contention that the ruling there should be held to justify this suit. Some criticism of that opinion is presented. We neither approve nor disapprove that opinion here. It is not directly in point. That opinion points out and emphasizes the fact that the case does **not** involve or present the question of the maintenance of a suit against the state. That question **is** presented here, and is the controlling question, and therefore the opinion in the Smith Case is not directly in point. In that opinion there are expressions which might be construed as approving the appointment of commissioners

to estimate consequential damages. Those expressions would be wholly incorrect as applied to a suit seeking and obtaining judgment against the state, as this one, where that question is properly presented as it is here. We, therefore, in this case cannot follow plaintiffs' construction of the rule in the Smith Case.

Our attention is directed to Wentz v. Potter, 167 Okla. 154, 28 P. (2d) 562; Morse v. Board of County Commissioners, 169 Okla. 600, 38 P. (2d) 945, and Sweeney v. Dierstein, 170 Okla. 566, 41 P. (2d) 673, and plaintiff contends they support his right to so sue the state. However, those cases involve or refer to an original taking by the state, in each case without consent of the landowner plaintiff, and without a condemnation by the state against the owner plaintiff. In such case the statutes authorize the landowner to commence the condemnation proceedings which the state should have commenced against him, but did not do so. The right of the plaintiff in each of those cases to so proceed depended on the fact that no such prior proceeding against him had been conducted by the state. Neither of those cases involved a subsequent action for consequential damages alleged to result from prior road construction on right of way properly purchased or condemned by the state in a former action against the same party. Those cases, therefore, do not support plaintiffs in bringing this second so-called condemnation proceeding to recover judgment for consequential damages.

In Stedman v. State Highway Commission, 174 Okla. 308, 50 P. (2d) 657, this court did adopt an opinion squarely in conflict with our present views. By reason of that fact we have given special consideration to a thorough test of our conclusion that such a suit cannot be maintained against the state. We are now thoroughly satisfied that this is a suit against the state; that the state cannot be sued for such consequential damages without its consent; that the state has not consented to such action, and therefore the same cannot be maintained. That being undoubtedly the correct rule, it is our clear duty to overrule the decision in Stedman v. State Highway Commission, supra, and that opinion is therefore expressly overruled.

It is urged that such conclusion leaves the plaintiff without present adequate remedy to enforce his right to compensation in the courts. That is true, but not because the courts are unwilling to act and to afford a remedy. It is true because the courts are powerless to afford a remedy by suit against the state. The rule that the sovereign state is immune from suit without its consent is a fundamental rule. That rule is of equal force with the law which creates the courts and defines their duty and authority. It would be usurpation of power for the courts to undertake to decree a right to sue and recover judgment against the state for damages resulting from any orderly state activity or properly prosecuted state function, unless the state had consented to be so sued.

The Supreme Court of New Mexico, in Dougherty v. Vidal, 21 P. (2d) 90, considered a similar or closely related question with an identical constitutional provision, and comparable statutes, and where the same arguments were made for the right to a judicial remedy. There it was said in the body of the opinion:

"The basic argument of such cases, and that stressed by appellant, is that unless the state can thus be reached, a citizen will be without redress for the invasion of his constitutional right. This flatly challenges state immunity from suit. The doctrine necessarily presupposes that very result, so far as judicial remedies are concerned.

"The argument also ignores the political remedy, which, after all, is the sole recourse of the citizen in many cases. If the state's immunity from suit were looked upon as license to the state to violate the Constitution and do injury to its citizens, it would be immoral and insufferable. It is justified by the fact that the Constitution is binding on the conscience of all branches of the government and that the Legislature as well as the courts may be looked to for justice.

"Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. 'A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.' Mr. Justice Holmes, in Kawananakoa v. Polyblank, 205 U. S. 349, 27 S. Ct. 526 527, 51 L. Ed. 834. The Legislature, not to mention the courts, should proceed slowly and with caution in subjecting the state itself to the exigencies of litigation. Langford v. U. S., 101 U. S. (11 Otto) 341, 25 L. Ed. 1010.

"Moreover, a question of jurisdiction arises. This court is the creature of the sovereign state. It can have no natural or presumptive jurisdiction over its creator. Such jurisdiction as we have over the state we must trace to the Constitution or to that branch of government which declares the state's public policy. In the absence of

plain consent, to entertain a suit against the state is judicial usurpation.

"Furthermore, 'It is usually said that statutes authorizing suits against the state are to be strictly construed, since they are in derogation of the state's sovereignty.' 59 C. J. 303; 25 R. C. L. 416; Lewis' Sutherland, St. Const. (2d Ed.) sec. 558.

"It will not do to say that because the state claims the right to proceed in condemnation, it impliedly consents to be sued in case its rightful use of the property taken results in consequential damage to property not taken. The right of the state to sue in its own courts has always stood side by side with its right not to be sued. Legislative authorization to a state arm or agency to enter into a contract with a citizen in the state's name has seemed to some judges sufficient to imply a consent to a suit against the state or its agency for a breach of it. We do not so understand. The state, as a contracting party, pledges its faith and credit; no more.

"The practical necessity back of these legal distinctions is too plain to require exposition. The state must be permitted generally to pursue its governing and business functions free from interference by its courts. Its Legislature may, indeed, make such provision for suits as its wisdom suggests. It will surround the jurisdiction with such restrictions as public policy may seem to require. A familiar instance is the limited jurisdiction of courts of claims."

And further in the body of the opinion: ·

"We have said so much because of appellant's insistence upon his remediless situation as against an invasion of his constitutional ·right—a matter to which no court should turn a deaf ear. We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts. By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. It is better that all understand that the legislative responsibility is undivided."

It will be readily seen that the applicable statutes of New Mexico are not identical with our own, being in some instances perhaps more nearly susceptible to plaintiffs' construction than our own. It is much clearer that our statutes have no tendency to indicate legislative intent to consent to such suits. This makes the language above quoted of special force in our case. The general rule was stated in Dougherty v. Vidal, supra, in these words:

" 'It is a fundamental doctrine at common law and everywhere in America that no sovereign state can be sued in its own courts or in any other without its consent and permission.' "

Supported by authorities there cited.

In the other states it is universally held that statutes permitting a state to be sued are in derogation of its sovereignty and will be strictly construed. Instances are found in Miller v. Pillsbury (Cal.) 128 P. 327, and cases therein cited.

The right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction, and statutes must clearly permit the state to be sued or the right to do so will not exist, as the rule was stated by the California Supreme Court in Westinghouse Electric & Mfg. Co. v. Chambers, 145 P. 1025.

See, also, Penn Mutual Life Ins. Co. v. Heiss, 141 Ill. 35, and Parker v. Catholic Bishop of Chicago, 146 Ill. 158, for discussion by the Supreme Court of that state as to a constitutional provision identical or quite similar to our own, and the distinction between direct injury and damage in the original taking which is paid for in the original condemnation, and consequential damages resulting from the construction work.

In Wilkinson v. State, 134 P. 626, the Supreme Court of Utah considered an action for consequential damages resulting from overflow water cast upon plaintiff's land by embankments and canals theretofore constructed. It was held the action could not be maintained due to the state's immunity from suit. The court observed the distinction between such consequential damages on the one hand, and upon the other hand, the liability of the state for property directly injured or damaged in the original taking, which damages are not merely consequential. Such direct damages are of course paid for in the original condemnation action in our state. In the Wilkinson Case the Utah court made it plain that it was not interfering with the right and duty of the state, upon the original taking, to settle all such direct damages. We think our statutes are plain as to the same right and duty in our state to pay such direct damages upon the taking of a road right of way, and so far as we know, it has never been contended to the contrary.

Since the action of plaintiffs cannot be maintained, the judgment rendered below is reversed, and the cause remanded, with directions to dismiss.

McNEILL, C. J., and PHELPS, CORN, and BUSBY, JJ., concur. RILEY, BAYLESS, and GIBSON, JJ., and JEROME C. SULLIVAN, Special Justice, dissent. OSBORN, V. C. J., disqualified and not participating.

BUSBY, J. (concurring). The rules in the majority opinion have already been adopted today in the similar case of Hawks et al. v. Walsh, No. 23235, this day decided, 177 Okla. 564, 61 P. (2d) 1109. I think those rules are undoubtedly applicable to this case and are correctly applied by the opinion here, and I concur.

RILEY, J. (dissenting). The learned trial court approved the verdict of a jury in this cause allowing recovery in the sum of $500, on account of consequential damages resulting to land from the construction of a state highway adjacent to the land.

The State Highway Commission, in road construction, excavated a cut ten feet deep in front of the Brixey place. The Brixeys owned a farm in Lincoln county and operated a country store and filling station thereon and derived a substantial profit therefrom prior to the construction of the road, the excavation of which obstructed the approach of patrons as well as the ingress and egress of the Brixeys. A dirt fill was also constructed, approximately half a mile long, adjacent to and along the place, by the same agency of the state. It ran through the lowlands along the main channel of Dry Fork creek, and obstructed the natural flow of water with the result that Brixey's land, devoted to agriculture, was thereby rendered subject to overflow.

The Constitution of this state declares as a principle of just government, section 24, art. 2:

"Private property shall not be taken or damaged for public use without just compensation."

The majority opinion defeats this principle by erroneously denying and converting the remedial procedure provided by the Legislature, whereas the Constitution in p'ain words as to such a taking or damage provides that "compensation irrespective" of any benefits proposed, "shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

Section 11931, O. S. 1931, prescribes by law that upon application "of either party" commissioners shall be appointed, and these commissioners **"shall inspect said real property and consider the injury** * * * and they shall assess the damages which said owner will sustain by such appropriation of his land, irrespective of any benefits from any improvement proposed." See, also, to and inclusive, section 11934, O. S. 1931. State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002; Stinchcomb v. Oklahoma City, 81 Okla. 250, 198 P. 508; Watkins v. Board of Com'rs of Stephens County, 70 Okla. 305, 174 P. 523; City of Tulsa v. Hindman, 128 Okla. 169, 261 P. 910.

No one disputes the rule stated by the majority that the "state cannot be sued without its consent." National Surety Co. v. State Bank Board, 49 Okla. 184, 152 P. 389.

It is clear, however, that the state of Oklahoma not only has given its consent to this action for the adjustment of such a wrong as committed in the case at bar, but it has provided the procedure for liquidating damages occasioned by such an injury.

Section 10094, O. S. 1931, provides that "Whenever **the construction** or location of any state highway, * * * or maintenance of such road shall require that private property be taken or damaged," the Highway Commission in the name of the state of Oklahoma shall have the right to purchase or lease the necessary land, and if compensation therefor cannot be agreed upon, just compensation may be ascertained and the property may be acquired and paid for under the provision of law relating to the exercise of the powers of eminent domain applicable to railroad corporations.

It has been pointed out that the statute, section 10094, O. S. 1931, provides when in the construction of any state highway private property is taken or damaged, either party may institute condemnation proceedings. That is exactly what the plaintiffs in the case at bar did. The case of State v. Fletcher, 168 Okla. 538, 34 P. (2d) 595, relied on by the majority, is not applicable, for that action did not concern the taking or damaging of private property for road construction, nor the taking or damaging of private property by the Highway Commission. It involved consequential damages resultant from the location of a sewer serving the Western Oklahoma Tuberculosis Sanitorium at Clinton. There was no existing provision of law allowing a suit for damages against such an agency of the state as represented by the board of control of the eleemosynary

institution. Consequently the Thirteenth Legislature enacted House Joint Resolution No. 20, art. 2, ch. 65, S. L. 1931, permitting the action to be brought. Had the action in the Fletcher Case been based on the taking or damaging of private property for road construction, there would have been no necessity for additional legislative action granting consent to sue the state.

The majority opinion recites that the case of State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002, is not directly in point. The plaintiffs in error in that case, represented by the Attorney General, assert that it is, and request that it be overruled. It appears to be in point. As here, it was based on consequential damages arising from construction of a state highway. It was brought by the landowner, and the procedure followed was in condemnation, reverting to the powers of eminent domain. The issue stated in that case was, "May a landowner resort to condemnation proceedings to ascertain damages to his land caused by the construction of a highway upon land of another?" It was held that chapter 118, S. L. 1927, "is a legislative enactment providing the manner in which compensation for the taking or damaging of private property for public use by the State Highway Commission shall be ascertained," and paragraph 1 of the syllabus reads:

"Under section 24, art. 2, of the Constitution, providing that 'private property shall not be taken or damaged for public use without just compensation,' a recovery may be had in all cases where private property is damaged in making an improvement that is public in its nature. It is not required that the damages shall be caused by trespass, or an actual physical invasion of the owner's real estate, but if the construction is the cause of the damage, though consequential, the owner of the property damaged may recover."

If a landowner in the cited case could resort to the procedure provided for condemnation of private property for public use in order to ascertain his damages resulting from road construction by the state, then right and justice demand the same relief for another citizen similarly situated, and no court of justice can properly reverse such a judgment and remand such a cause with directions to dismiss.

In the advisory opinion of Hawks v. Walsh, No. 23235 (adopted Oct. 22, 1935), rehearing granted March 3, 1936, and opinion dismissing promulgated as a companion case herein), the special master, and this court prior to the last action, deemed it:

"Well settled that an award in a condemnation proceedings is presumed to include all damages naturally and reasonably resulting from the taking, present and future. However, where in constructing the improvement such a plan is pursued that damages result to the remainder of the property, which damages could not have been foreseen, anticipated or contemplated at the time of the original proceedings, the owner of the property is not precluded from recovering additional damages" (by resorting to condemnation proceedings provided) and "to say that the landowner is precluded from recovering subsequent damages which no one contemplated would be inequitable to say the least. The question is no longer at large in this state."

The case of Sweeney v. Dierstein, 170 Okla. 566, 41 P. (2d) 673, was cited as foreclosing and concluding the proposition of law in this state. Therein we held:

"Acts of the Legislature giving the consent of the state to be sued must be substantially followed."

And:

"An easement granted the state for highway purposes is taken in consideration, both of the value of the land taken and of the consequential damages to adjacent property of the grantor, unless the Highway Commission make such use of the tract occupied by the highway as could not reasonably have been contemplated and expected by the grantor, resulting in unanticipated injury to the adjacent property."

Therein this court propounded to itself this query of law:

"Can the Highway Commission be sued by an individual to ascertain the damages and injury he may suffer by the construction of a highway over his premises?"

Therein this court solemnly and finally answered the inquiry affirmatively and said:

"The Legislature has given the express consent of the state that its Highway Commission be sued to ascertain such damages and injuries in sections 10093 and 10094, O. S. 1931. Both these statutes refer to the provisions of law for the exercise of the right of eminent domain by railroad corporations in this state for the ascertainment of compensation for, and acquirement of, property needed in the construction or location of a state highway or any part thereof. * * * The condemnation proceedings are applicable whether the property has already been taken for highway purposes or not. * * * To hold otherwise would leave the property owner, who had actually been misled and imposed upon by agents of the Highway Commission, without remedy."

Now the court holds otherwise and to the

contrary, without so much as mentioning, to say nothing of overruling, its own words that so severely castigate and condemn the damage or destruction of property rights, with the relegation of the citizen to a remediless position contrary to fundamental law expressed in the Constitution. 20 C. J. 1070; Stevens v. City of Worcester (Mass.) 106 N. E. 587; Martenis v. City of Tacoma (Wash.) 118 P. 882; Cassassa v. City of Seattle (Wash.) 119 P. 13.

On October 22, 1935, this court promulgated a decision in the case of Stedman v. State Highway Commission, No. 24905, mandate issued November 7, 1935, 174 Okla. 308, 50 P. (2d) 657, which decides the exact issues now decided to the contrary. Incorporated Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093; Smith v. Board of Com'rs, etc., (Kan.) 214 P. 104.

Therein the objection was:

"That plaintiff was seeking only damages claimed to have resulted from the construction of a public highway upon lands belonging to the state; that the action is in form an attempted condemnation proceeding, but in fact an action for damages prohibited by the Eleventh Amendment to the Constitution of the United States; that the action is one against the state to which the state has not consented, and that the matters involved had theretofore been adjudicated. * * *"

The objections of the Attorney General were overruled and the defendant answered further, stating the objections.

The trial court was reversed by this court for giving instructions 1 and 2, and committing the error now committed by the majority opinion, to wit, having "completely ignored the theory upon which plaintiff predicated this action. That is, that said action was a proceeding in condemnation and not one for damages based upon negligence in the construction and maintenance of the highway. * * *" As in Sweeney v. Dierstein, supra, "No summons was served upon the State Highway Commission," nor was a summons necessary (Citizens State Bk. of Vici v. Gettig, 77 Okla. 48, 187 P. 217), for "sections 419, 420, and 421, O. S. 1931, also govern the court in actions of this kind. They provide that the Attorney General or his assistant shall have ten days' notice in writing from the court clerk of the trial of actions against the state, and provide that judgment rendered against the state by default shall be void unless such notice be given. As stated above, the state has given its express consent to be sued in actions of this kind, but the laws giving such consent must be substantially followed." Sweeney v. Dierstein, supra.

In the opinion in Stedman v. State Highway Commission, supra, the rules of law applicable to that case, and equally and fully applicable to the cases at bar, were stated:

"Under section 24, art. 2, of the Constitution, providing that 'private property shall not be taken or damaged for public use without just compensation,' a recovery may be had in all cases where private property is damaged in making an improvement that is public in nature. It is not required that the damages shall be caused by trespass, or an actual physical invasion of the owner's real estate; but if the construction is the cause of the damage, though consequential, the owner of the property damaged may recover.

"The use of the words 'or damaged' in addition to the word 'taken' in section 24, art. 2, of the Constitution, indicates a deliberate purpose not to confine a recovery to cases where there is a physical invasion of the property affected, but to make the test of liability the fact that private property has been 'damaged' for public use, without regard to the means by which the injury was effected.

"Under the provisions of section 24, art. 2, of the Constitution, the state is prohibited from taking or damaging private property for public use without just compensation.

"By the provisions of sections 11931-11934, O. S. 1931, the state has provided an adequate remedy for the determination of damages to private persons for property taken or damaged by the state for public use, and such remedy is exclusive.

"The issues in an action by a landowner to recover consequential damages to property arising solely by the construction and maintenance of a state highway are not res adjudicata by reason of a former condemnation proceeding where an award was made and accepted by the owner for damages, which award included the value of the land taken and the damages to the remainder of the tract occasioned by said taking.

"The rule that an owner must recover in one proceeding all the damages which have resulted or are reasonably liable to result from the taking or damaging private property for public use has no application to damage caused by a separate and distinct taking or damaging by construction of public works."

Recurrence should be had to cases cited herein, and especially the decision in State Highway Commission v. Smith, supra, followed with approval in C., R. I. & P. v. Larwood, 175 Okla. 96, 51 P. (2d) 508; Public Service Co. of Oklahoma v. Raburn, 162 Okla. 81, 19 P. (2d) 167; Morse v. Board of Com'rs of Marshall Co., 169 Okla. 600, 38 P. (2d)

945, and Wentz v. Potter, 167 Okla. 154, 28 P. (2d) 562, holding:

"Section 11, ch. 488, S. L. 1923-4, as amended by ch. 118, S. L. 1927, has placed into effect section 11981, O. S. 1931 (5501, C. O. S. 1921), which grants to plaintiff herein the right to file a petition in the district court, requesting the appointment of three freeholders to act as commissioners to assess the damages which will be sustained by the construction of the public improvement. Section 11933, O. S. 1931, provides for a jury trial, and section 11934, O. S. 1931, provides for an appeal to this court. This is the procedure against the state to which the state has given its consent, which procedure provides ample redress for any wrong or damage suffered by plaintiff."

These cases are so violently antagonistic to the statements of law and the conclusion now reached by the majority opinion I have thought it not amiss to call attention to previous decisions in order that applications of the law may be made uniform, for uniformity of decisions promotes justice.

SULLIVAN, Special Justice (dissenting). I dissent from the majority opinion and concur in the views expressed in the dissenting opinion filed by Mr. Justice RILEY, especially to the effect that the rule in the case of State Highway Commission v. Smith, 146 Okla. 244, 293 P. 1002, should govern herein, and that section 11931, O. S. 1931, prescribing procedure to be followed for recovery of loss of property taken or damaged by the State Highway Commission, gives the consent of the state to the particular form of action as instituted herein.