STATE of Oklahoma ex rel. DEPARTMENT OF TRANSPORTATION, Petitioner,

v.

Patricia HOEBEL, Judge of the District Court in and for Tulsa County, State of Oklahoma, Respondent.

No. 53257.

Supreme Court of Oklahoma.

May 8, 1979.

Rehearing Denied June 4, 1979.

Spencer W. Lynn, State Dept. of Transp., Oklahoma City, for petitioner.

Richard L. Blanchard, Tulsa, for respondent.

BARNES, Justice:

The issue presented in this case is whether a plaintiff, who brings an action in the nature of inverse condemnation, alleging a taking of his or her land by virtue of continual flooding caused by the construction of a public highway, may bring such an action without first obtaining legislative permission to sue the State.

The question is raised by the State of Oklahoma in an original action, in which it asks us to assume original jurisdiction and issue a Writ of Prohibition, prohibiting the Respondent Trial Judge, the Honorable Patricia Hoebel, from further proceeding in an action in the nature of inverse condemnation brought in the District Court of Tulsa County by Pauline A. Smittle.

In her petition below, Ms. Smittle alleges that by virtue of the construction of the Mingo Valley Expressway adjacent to her property, her land has been continually flooded, constituting the taking of her property without just compensation.

Article II, Section 24, of the Oklahoma Constitution, provides in part that:

"Private property shall not be *taken* or *damaged* for public use without just compensation." [Emphasis added]

■ Through case law developed over the years, a distinction has been made between suits brought against the State seeking compensation by virtue of the above quoted constitutional provision—this Court has made a distinction between those suits in which a *taking* is present, and those in which *only damages* are present. This dichotomy has been held to have jurisdictional significance. In cases in which a *taking* is present, a citizen may sue the sovereign State in inverse condemnation without first

obtaining permission from the sovereign.[1] However, in cases in which only *damages* are involved, a citizen may not *sue* the sovereign State without first obtaining legislative permission to sue; if such permission is not given, the trial court lacks the jurisdictional power to hear the case.[2]

In the original action before us, the State argues that Ms. Smittle's suit is in reality one for damages, and no taking is present, and that permission from the sovereign to sue is necessary, and that without such permission the trial court lacks jurisdiction to further proceed in the matter. While we agree that a citizen must obtain permission prior to suing the State for damages, and that a trial court lacks jurisdiction to consider such a suit in the absence of such permission, we cannot agree with the State's position.

The weakness in the State's argument is its assertion that the alleged flooding does not and *cannot constitute a taking.* In making this argument, the State calls our attention to prior decisions in which we held that flooding did not constitute a taking.[3] However, in all those cases, we were not presented with a case at the pleadings stage, but, rather, were faced with either a case on appeal or a case in which a record had been made. Our holdings in those cases merely stand for the proposition that the flooding shown to be present in those cases, under the facts presented, did not constitute a taking. Our holdings should not be construed to mean that flooding caused by virtue of the construction of public works cannot constitute a taking. Indeed, it makes little sense to rule that a *taking* is present when a citizen's land is covered with steel and cement; yet, not present when the land is covered with water. In either case, the interference can effectively destroy or impair the land's usefulness. In either case, a citizen can be permanently deprived.

The majority rule in this country is that flooding, whether permanent or recurring, may constitute a *taking* if the flooding is severe enough so as to effectively destroy or impair the land's usefulness.[4]

In *Henthorn v. Oklahoma City, Okl., 453 P.2d 1013 (1969),* this Court, in a unanimous opinion, held that frequent aircraft flights over a citizen's land may constitute a *taking,* as that word is used in Section 24, Art. II of this State's Constitution. In so holding, we stated in syllabus 2 of our opinion:

"Ordinarily, the question of whether a continuing interference is substantial enough to constitute a 'taking' under Section 24, Art. 2, Constitution, is one for the jury."

Similarly, we believe that flooding, if serious enough to constitute substantial interference with the use and enjoyment of the property, may constitute a *taking,* and that whether such a *taking* is present is a question for the trier of fact. This being the case, it would be inappropriate for this Court to issue a Writ of Prohibition, prohibiting the trial court from further proceeding in the action below, for facts which may constitute a *taking* have been plead, and it is for a jury, not this Court, to decide, under the facts presented below, whether a taking is present.

For this reason, we refuse to grant the Writ of Prohibition requested.

ORIGINAL JURISDICTION ASSUMED AND PETITION FOR WRIT OF PROHIBITION DENIED.

---

1. E. g., *State ex rel. Dept. of Highways v. Cook,* Okl., 542 P.2d 1405, 1406 (1975); *State v. Keen,* Okl., 354 P.2d 399, 400 (1960); *Hawks v. Walsh,* 177 Okl. 564, 61 P.2d 1109, 1111 (1936); and *State Highway Commission v. Brixey,* 178 Okl. 118, 61 P.2d 1114, 1115–16 (1936).

2. Id.

3. *State v. Keen,* Okl., 354 P.2d 396 (1960) (an inverse condemnation case in which this Court, in an original action, considered the merits of an objection to jurisdiction filed *after* the Commissioners' Report had been filed.); *State Highway Commission v. Adams,* 178 Okl. 270, 62 P.2d 1013 (1936); and *State Highway Commission v. Brixey,* 178 Okl. 118, 61 P.2d 1114 (1936).

4. See, 2 Nichols on Eminent Domain, § 6.23(3), and 26 Am.Jur.2d, Eminent Domain, § 65.

WILLIAMS, HODGES, SIMMS, DOO-LIN and HARGRAVE, JJ., concur.

LAVENDER, C. J., IRWIN, V. C. J., and OPALA, J., dissent.

IRWIN, Vice Chief Justice, dissenting:

I would not assume original jurisdiction and respectfully dissent.

I am authorized to state that Lavender, C.J., and Opala, J. concur in this view.