STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Petitioner,

v.

W. P. KEEN, Judge of the District Court in and for the Second Judicial District of the State of Oklahoma, Respondent.

No. 39152.

Supreme Court of Oklahoma.

July 19, 1960.

See also 354 P.2d 399.

Roland A. Walters, Jr., Max Cook, Oklahoma City, for petitioner.

Wise & Ivester, Sayre, for respondent.

BLACKBIRD, Justice.

In the present action the above named petitioner has applied to this court to take original jurisdiction and to grant its petition for a writ of prohibition to prevent the Respondent Judge from proceeding with the trial of Cause No. 13447, in the District Court of Beckham County, entitled "C. H. Blackmon and Lina Blackmon, husband and wife, Plaintiffs, vs. State of Oklahoma, ex rel Department of Highways of the State of Oklahoma, Defendants."

Plaintiffs in that action, hereinafter referred to merely as the "Blackmons", owned and resided on a farm near the North Fork of the Red River, south of Sayre, Oklahoma, when the defendant therein, hereinafter referred to both as the "Department" and the "Petitioner", commenced execution of its plan to convert U. S. Highway No. 66, in that area, into a 4-lane highway. To have right-of-way wide enough to thus add two more lanes to said highway as it then extended alongside the Blackmons' farm, the Department purchased from them a 100-foot strip of land off one side of said farm, and constructed certain new land fills and grades in creating a base for the new 2-lane portion of the highway's approach to a new bridge across the above-mentioned stream. It seems to be conceded, for the purpose of the present original action, that this new construction has caused the North Fork, in periods of heavy rains since it was completed, to flood certain remaining portions of the Blackmons' farm; and, it was to recover their damages from this flooding that they instituted Cause No. 13447, supra. In their petition filed therein, the Blackmons referred to the effect of this flooding on their farm as "taking" it, and after more specifically alleging that the value of said property had been "totally destroyed by certain unlawful taking", they prayed (as in a condemnation proceeding) for the respondent District Judge to appoint three commissioners to appraise their injury "* * * by reason of the taking * * *".

Instead of answering the Blackmons' said petition in said cause, the Department filed a pleading entitled: "Special Appearance and Motions to Quash and Dismiss", setting forth therein the following grounds therefor:

"1. That there is nothing in the laws of the State of Oklahoma whereby provision is made for service of notice or process upon the State of Oklahoma in actions of this kind and nature.

"2. That the court has no jurisdiction in this action for the reason that this is a suit against the sovereign State of Oklahoma without the sovereign's consent.

"3. That plaintiff(s) * * * (have) * * * adequate remedy at law by proceeding according to the Constitution and the Statutes of the State of Oklahoma, rather than attempting to obtain damages by way of a reverse condemnation proceeding, as is being done in this action."

After the respondent Judge had overruled the above-quoted pleading, the Blackmons, not being satisfied with the appraisal of $4,000 set forth in the Commissioners' report, demanded a jury trial. The Department then re-challenged the Court's jurisdiction and manner of proceeding, by filing its "Exceptions and Objections To Report of Commissioners", in which it again prayed for dismissal of the action. After this pleading had been overruled, the Department instituted the present original action in this court, stating the above facts, among others less material, and alleging, inter alia, that unless prohibited, the respondent Judge will proceed with a jury trial (as demanded by the Blackmons), and asserting that, in so doing, he is assuming "to exercise judicial power not granted by law and is assuming jurisdiction over the sovereign State of Oklahoma without there having been the proper legislative permission granted and further is attempting to make unauthorized application of * * * judicial force and power. * * * when as a matter of law, he is wholly without jurisdiction to so act."

In support of its position herein that respondent should be prohibited from taking any further action in Cause No. 13447, supra (which is conceded to be in the nature or a reverse condemnation proceeding) except to sustain their aforesaid exceptions and objections and to dismiss the action, petitioner cites, among other authorities, the cases of State ex rel. Oklahoma State Highway Commission v. Alford, Okl., 347 P.2d 215; State v. Adams, 187 Okl. 673, 105 P.2d 416, and State Highway Commission v. Adams, 178 Okl. 270, 62 P.2d 1013. Respondent seeks to avoid application herein of the rule quoted and followed in the Alford case by pointing out fact differences between this case and that one and others in

which it was applied. He urges consideration of the Blackmons' cause of action in case No. 13,447, as a "taking" of private property for public use under Sec. 24, Art. 2, of our State Constitution authorizing condemnation proceedings for such taking. In support of this theory, he cites cases from this, and other jurisdictions, some of which are discussed in the annotations beginning at 2 A.L.R.2d 667, which we mentioned in the Alford case, supra. Our principal reason for referring to that annotation in our opinion in that case was that it seemed to set forth a fair, though somewhat ambiguous, appraisal of the principles in effect in this State, as indicated, or foretold, by its opening remarks as follows (2 A.L.R.2d 696):

"In some jurisdictions it has either been held, or strongly indicated, that the State itself could not be sued, without consent, *under the eminent domain theory* for liability for consequential damages occasioned by negligent construction or maintenance of public projects. Liability was denied, however, *not on the theory that the constitutional provision as to eminent domain was not applicable to consequential damages so occasioned, but rather on the theory that the State had not given its consent to be sued,* and that until and unless it had done so, its traditional immunity acted as a barrier even in such type of cases. The result hence rested *not on immunity from liability, but immunity from suit.* (Citing cases)." (Emphasis ours).

As is above indicated, the pivotal question out of which the Blackmons' difficulty arises is not whether the injuries to their land may be considered a "taking" under the eminent domain theory and our Constitution's Sec. 24, Art. 2. The primary question is: Does our Constitution and/or our condemnation statutes give authority to sue the State in reverse condemnation proceedings for damages which do not include the value of land directly taken as necessary for public use in the construction of a highway? The answer to this question is re-

vealed in the two Adams cases, supra. In the first one, State Highway Commission v. Adams (62 P.2d 1013) plaintiff obtained a trial court judgment for flood damages in an action simulating a reverse condemnation proceeding. In this court, said judgment was reversed and the action ordered dismissed. In the later Adams case (105 P.2d 419), plaintiffs, by special legislative enactment, obtained authority to sue the State for their flood damages, and this court affirmed their judgment therefor. In the latter case we said:

"We hold that the damage sued for in this action was not such as would be awarded had the right of way been condemned, and was not covered by the price paid for the easement. Also, *such consequential damage comes within the purview of Section 24, Art. 2, of the Constitution.* (Citing cases). In Stedman v. State Highway Commission, 1935, 174 Okl. 308, 50 P.2d 657 (overruled on other grounds in State Highway Commission v. Brixey, 1936, 178 Okl. 118, 61 P.2d 1114), this Court held that the right to recover for consequential damages resulting from the construction of a highway was *conferred by the above section of the Constitution,* citing and analyzing many authorities from this and other States. In State Highway Commission v. Brixey supra, this Court, *while recognizing and assenting to the right to recover such damages,* held that *such an action was a suit against the State,* and could not be maintained without the State's consent, overruling Stedman v. State Highway Commission on this point." (Emphasis ours.)

As this court's previous decisions deny authority to sue the State in the manner the Blackmons are attempting in cause No. 13,447, supra, we hold that the respondent Judge of the District Court should have sustained the petitioner's challenge to said Court's jurisdiction over it, and that his continuing attempt to exercise jurisdiction therein, (instead of dismissing the action) constitutes an exercise of unauthorized judicial power. Petitioner's application and petition are therefore granted and the writ of prohibition prayed for is issued.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, JACKSON and BERRY, JJ., concur.